[No. 25754. Department One. October 5, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS MCKENZIE *et al., Appellants.*[1]

[1]Reported in 49 P. (2d) 1115.

*Milton S. Hanauer* and *H. Sylvester Garvin,* for appellants.

*Ralph E. Foley,* for respondent.

GERAGHTY, J.—The defendants were charged by information with the crime of endangering life and property by placing explosives in a street car, in violation of Rem. Rev. Stat., § 2652 [P. C. § 8972]. The information, omitting formal parts, follows:

"That the said defendant, Harry Quinn, in the county of Spokane, state of Washington, on or about the 11th day of September, 1934, then and there being, did then and there maliciously, wilfully, unlawfully and feloniously, without excuse or justification, place an explosive substance, to-wit: one stick of dynamite with fuse and detonating cap attached, in street car No. 190 belonging to the Washington Water Power Company, a corporation, in such a manner and under such circumstances as to injure and destroy the same if exploded, and to endanger the safety of several people present in the said car at the said time; and that the said defendants, Thomas McKenzie and Homer Hasty, did then and there maliciously, wilfully, unlawfully and feloniously and without excuse or justification, aid, abet, counsel, advise, encourage and induce the said Harry Quinn in and to the commission of the crime aforesaid."

Prior to the trial, the defendant Quinn pleaded guilty and later testified at the trial as a witness for the state. The defendants McKenzie and Hasty, by demurrer, attacked the information upon two grounds: First, that it did not state facts sufficient to constitute an offense; and second, that it was vague, indefinite and uncertain. The demurrer was overruled. The jury returned verdicts finding the defendants guilty as charged. Motions for a new trial and in

arrest of judgment having been denied, judgment was entered upon the verdicts.

The state's evidence tended to show that, while a number of employees of the Spokane United Railways were on strike, a stick of dynamite with a fuse attached was found in the smoking compartment at the rear of a street car used by the railway company in carrying passengers upon one of its lines. Harry Quinn was arrested by police officers of the city of Spokane and, being taken to police headquarters, made a statement which was reduced to writing, signed, and sworn to by him, in which he confessed placing the dynamite and fuse on the street car.

In the statement, he said that the dynamite had been given to him by the appellant McKenzie in the presence of Hasty, who, with himself, was in an automobile at the time; that Hasty drove him by arrangement to a point where he alighted from the automobile and boarded a street car running to the eastern part of the city. It was arranged that the explosives would be left in the car after it had reached the end of the route, and that Hasty would follow in his automobile some distance behind and take Quinn into the city after the explosives had been placed. When the street car reached the end of the line, Quinn lighted the fuse. As a black puff of smoke appeared, he weakened in his purpose, snuffed out the fuse, put the dynamite under a seat, left the car, met Hasty, and was driven by him to the city, as planned.

Later the same day, Hasty was arrested by the police, taken to headquarters, and, being questioned, first denied knowledge of the plan to use the explosive. Later, he joined Quinn in a sworn statement in substantial agreement with the separate statement made by Quinn. On the next day, Hasty made a

separate statement. In the separate statements made by Hasty and Quinn, as well as in their joint statement, McKenzie was implicated as the one who had directed the placing of the explosive.

Later, McKenzie was arrested and taken to the police station. On being told that Quinn and Hasty had made written statements implicating him, he requested permission to read the statements. We quote the testimony of James McCarry, captain of the detectives:

"Q. Will you just tell us in your own words, Captain, what was said there at that time and what the defendant said? A. Well, I introduced Mr. McKenzie to Mr. Greenough. I told him, 'This is Mr. Greenough, the prosecuting attorney, and he wants to talk to you about this case.' And then Mr. Greenough told him what the law was and what his rights were about having an attorney and if he . . . Mr. GARVIN: Now, if your Honor please, I submit that he should say just exactly what was said and done. THE COURT: What was said? THE WITNESS: (continuing) Mr. Greenough told him that he could have an attorney if he wanted and if he wanted to make a free statement of his own will that he could do so and he told him that we have statements here from Quinn and Hasty. Q. Did he say what sort of statements they were . . . that is, oral or written? A. Written statements signed by Quinn and Hasty. Q. And then he asked to read these statements? A. Mr. McKenzie asked to be allowed to read the statements. And he asked Mr. Greenough if it was all right and he said, 'Yes.' So he read Quinn's statement and Hasty's statement. I am not sure whether he read any more statements. Their statements in regard to the dynamite case. The statements that they made as to their part in the dynamite case. Q. You say that he read Quinn's statement and the statement by Hasty? A. Yes, sir. Q. The separate statements which were in writing? A. Yes, sir, in typewriting. Q. There was a third statement? A. There was a joint statement by Hasty and Quinn. I am not sure

whether he read that one or not. Q. You say he read those statements there in your presence? A. He did. Q. And the statement of Hasty is that—what you have just related? A. Yes, that was Hasty's statement. Q. What, if anything, was said after he had read the statement? A. When he read the statement he said to Mr. Greenough 'If I do make a statement, what will I get out of this; how much time will I have to do?' Mr. Greenough said that he couldn't tell him —that that would be a matter for the judge to pass on. However, he told him that if he made a frank statement that it was always in his favor and that the truth was always the best thing to say, and then McKenzie said, 'I suppose all the other boys will get at least a year out of this?' And Greenough still said he couldn't tell them what they would get.''

The three statements were introduced in evidence over the objection of the appellants.

The first error assigned is the overruling of the demurrer to the information. It is contended that the information merely follows the cold wording of the statute without setting forth any of the facts or prevailing conditions upon which its conclusions are based. We think this assignment is without merit. While the information follows the statute in defining the crime, the language used is sufficiently definite to enable the accused to prepare their defense and to avail themselves of acquittal or conviction as a protection against further prosecution for the same offense. *State v. Randall,* 107 Wash. 695, 182 Pac. 575; *Seattle v. Proctor,* 183 Wash. 299, 48 P. (2d) 241.

Appellants next assign error upon the introduction in evidence of the three statements or confessions made by Quinn and Hasty. As to the appellant Hasty, we think this assignment is without merit. The joint statement sworn to by himself and Quinn substantially reiterated and confirmed the de-

tails set out in the separate statement of Quinn. Hasty could in no way have been prejudiced by the first statement.

McKenzie's objection to the statements is that they were extrajudicial confessions and pure hearsay. The state contends that the appellants' objection is based on an erroneous conception of its theory in introducing the statements; that they were introduced not for the purpose of proving the commission of the crime, but in order to show the reaction of the appellant McKenzie when they were read to him, as testified to by Captain McCarry. In support of its contention that the statements were admissible for this purpose, the state cites 2 Wharton's Criminal Evidence, § 656, as follows:

"Admissions by silence. It may be stated as a general rule that, when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and fact of his failure to deny are admissible on a criminal trial as evidence of his acquiescence in its truth. A statement so made would, of itself, be objectionable as hearsay testimony, being a statement made at some time other than at a present trial, offered to prove the truth of the matter therein asserted, and based entirely on the credibility of a declarer not then before the court. However, as in the case of admissions generally, the statements herein considered are not offered as evidence of their truth merely because they were uttered; they are secondary in nature and are accepted in evidence as untainted by the hearsay stigma merely because they are a necessary predicate to the showing of the substantive evidence, the reaction of the accused thereto. The crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements tending to connect them with actions for which they may suffer punishment to be made in their presence without objection or denial by them unless

38

they are repressed by the fact that the statement is true. Consequently, silence under accusation is some evidence from which the jury may infer that the accused acquiesces in the statement and admits its truth. But silence or failure to deny, of itself, unaccompanied by the statement in the face of which the accused remained silent or which he failed to deny, cannot well be testified to so as to convey meaning. The witness might testify that an incriminating statement was made without stating what it consisted of, but such testimony would be objectionable as a mere conclusion.''

The rule announced above is qualified by what is said by Wharton in § 661:

''There is a wide divergence of judicial opinion as to the effect, on admissibility of incriminating statements made in the presence of an accused and not denied by him, of the fact that he was under arrest, or in custody under a criminal charge, at the time the accusation was made. In some jurisdictions it is held that the mere fact of arrest is not sufficient to render the testimony inadmissible, but that such fact deserves consideration only as one of the circumstances under which the accusation was made, in determining whether the accused was afforded an opportunity to deny, and whether he was naturally called on to do so. In another group of states, however, it is held that the mere fact of arrest is sufficient to render inadmissible the fact of the accused's failure to deny accusatory statements then made in his presence and hearing. These courts maintain that it is the common knowledge and belief of men in general that silence while under arrest is most conducive to the welfare of an accused whether he be guilty or innocent; that is to say, that anything he may say not only may, but will, be used against him; and that such restraint upon an accused destroys the. basis for an inference of acquiescence by silence or failure to controvert. It is also held that where an accused is restrained from replying to or denying an inculpatory statement by such circumstances as fear, physical pain and suffering, advice of counsel, admonition as

to silence by the declarer or others who are present, or a belief that his interests will best be served by silence, no inference of his acquiescence therein may be drawn from his failure to reply, and the evidence will be held inadmissible.''

''Where accusatory statements are made in the presence of a respondent and not denied, the question whether his silence has any incriminating effect depends upon whether he was under any duty or any natural impulse to speak. Sometimes or often, in the earlier stages of the matter, there may be such a duty or impulse; but, after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; and the customary formula of warning should be changed, and the respondent should be told, 'If you say anything, it will be used against you; if you do not say anything, that will be used against you.' See comments of Shaw, C. J., in *Com. v. Kenney*, 12 Metc. (53 Mass.) 235, 46 Am. Dec. 672; *Com. v. Walker*, 13 Allen (Mass.) 570; *Com. v. McDermott*, 123 Mass. 440, 25 Am. Rep. 120; *Porter v. Com.* (Ky.) 61 S. W. 16, 17 and citations; *State v. Weaver*, 57 Iowa, 730, 11 N. W. 675. Also comment by Judge Learned Hand in *Di Carlo v. United States*, (C. C. A. 2) 6 F. (2d) 364, 366. In *Price v. United States* (C. C. A. 6) 5 F. (2d) 650.'' *McCarthy v. United States*, 25 F. (2d) 298.

The rule that the mere arrest is sufficient to render inadmissible the fact of the accused's failure to deny accusatory statements made in his presence and hearing is supported by the weight of authority and certainly by the better reasoning. A strong reason in support of this rule is given by Wharton:

''A practice popular among police officials as a means of obtaining evidence by means of tacit admissions is that of reading detailed statements of the

crime purportedly made by a codefendant or companion in the crime with a view towards eliciting either a complete confession or an admission by silence, to be used against the defendant to whom the statement is read. Such statements have been held to be inadmissible when sought to be introduced upon the ground that they were tacitly admitted. The reason for the holding has been that there was no necessity for denying or answering the statement read." 2 Wharton's Criminal Evidence, § 660.

But many of the courts which adhere to the rule that the silence of an accused under arrest is not to be taken as a tacit admission of accusatory statements made in his presence, hold that, if he makes an equivocal reply or one susceptible of being interpreted as an admission, the statement and answer or comment may be admitted:

"The defendant after his arrest was taken to Dedham jail, where was confined Bedard, one of those jointly indicted with the defendant for this crime. Bedard had made a statement to an officer implicating himself and the defendant in the commission of the crime. He repeated this statement in the presence of the defendant. At its conclusion the defendant called him an insulting name and said, 'I would like to kill you.' This was admissible in evidence. When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible. *Commonwealth v. Spiropoulos,* 208 Mass. 71, 74. *Commonwealth v. Gangi,* 243 Mass. 341, 345. *Rex v. Christie,* [1914] A. C. 545, 564, 565." *Commonwealth v. Madeiros,* 255 Mass. 304, 151 N. E. 297, 47 A. L. R. 962.

According to testimony of officer McCarry, McKenzie requested, and was accorded, permission to read the statements of Quinn and Hasty. He did not

deny the accusations or remain silent, but inquired what the penalty would be if he made a confession, and what would likely be the term of imprisonment of the others who had confessed. His reaction to the accusation was not that of a man conscious of his own innocence.

Statements of this character are to be scrutinized with great care by the trial court. As was said by circuit judge Learned Hand in *Di Carlo v. United States,* 6 F. (2d) 364,

"While the question is a delicate one, dependent largely upon the discretion of the trial judge, nevertheless more must appear than that the defendant heard the statement."

So much more appeared in the instant case that we do not feel warranted in reversing the conclusion of the trial court in admitting the statements with the remarks of McKenzie thereon.

What we have said above, disposes of appellants' assignments based upon the denial of their motions in arrest of judgment and for new trial. The judgment will be affirmed.

MILLARD, C. J., TOLMAN, BEALS, and MAIN, JJ., concur.