[No. 29427. *En Banc.* August 3, 1945.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT REDWINE, *Appellant.*[1]

[1]Reported in 161 P. (2d) 205.

468

*Fred M. Bond,* for appellant.

*John T. Welsh* and *Robert A. Hannan,* for respondent.

GRADY, J.—The appellant, Robert Redwine, was found guilty by a jury of the crime of assault in the second degree and from the judgment entered has taken this appeal. The appellant asserts as ground of reversal, (1) that the evidence produced at the trial was not sufficient upon which a verdict of guilty could be based, (2) that the court erred in the admission of testimony, and (3) that the court permitted improper cross-examination of a witness.

The factual situation which the jury had the right to find existed from evidence submitted to it, is substantially as follows:

Hawley Stevens, on the occasion in question, was sitting at the bar in a beer parlor. Appellant sat beside him and to his right and invited Stevens to have a drink of beer with him. Stevens refused and hurled some epithets at him. Appellant had a small open knife in his right hand and struck Stevens with it on his right arm just above the elbow, inflicting a substantial wound. Stevens struck appellant, which caused him to fall from the stool on which he was sitting. While appellant was lying on the floor, the knife was taken from his right hand and later delivered to an officer. Witnesses testified to various details relative to the assault.

After the verdict of guilty was returned, appellant filed a motion in arrest of judgment and an alternative motion for a new trial. The motions were denied.

The appellant offered no evidence in his own defense. He rested his case at the close of the respondent's case. He sought to show by cross-examination of the witnesses called by respondent that, when the injured party struck him, he raised his arm to ward off the blows, and if the complainant received the cut claimed, it occurred in this way. The jury declined to accept this version of the manner the complaining witness received his wound.

Appellant argued that the testimony of the witnesses was too vague and uncertain to justify a finding that he stabbed the complaining witness and that the physical facts contradicted such a claim.

We have read and considered the testimony given at the trial and find that it contains all of the elements of the crime charged, and that it is of sufficient probative force, if believed by the jury, to support and justify the verdict. The weight to be given to the testimony of the various witnesses and the physical facts was for the jury to determine.

After the affray took place, Robert Farrell brought appellant into the custody of two police officers, and he was then taken to jail. One of the police officers, in response to a question, testified:

"A. Well I and Mr. Boock was in the police wagon and Sonny Tripplett and Bob Farrell both, took Mr. Redwine down to the car and said he cut a man with a knife. Q. Was the defendant present when the statement was made? A. Yes. Q. He heard it? A. Yes. Q. Did he deny it? A. Not that I know of."

Appropriate objection and motion to strike were made. The court overruled the objection and denied the motion.

The admission of this testimony is assigned as error.

■ The general rule is that, when a statement is made in the presence and hearing of an accused that is accusatory or incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and fact of his failure to deny, contradict, or object are admissible on a criminal trial as evidence of his acquiescence in its truth. *State v. Baruth,* 47 Wash. 283, 91 Pac. 977; *State v. Goodwin,* 119 Wash. 135, 204 Pac. 769; *State v. McKenzie,* 184 Wash. 32, 49 P. (2d) 1115; 20 Am. Jur. 483, Evidence, § 570; Annotations 80 A. L. R. 1235; 115 A. L. R. 1510.

If we went no further in our review of this case, we could properly hold that the testimony was admissible under the rule pronounced by the above authorities, but it is claimed by the appellant and denied by the respondent that the statement referred to was made when appellant was under arrest, and therefore the rule is not applicable.

The authorities are in conflict as to whether the foregoing rule is applicable if, at the time the statement is made, the accused was under arrest. The rule in this state is set forth in *State v. MacKenzie,* 184 Wash. 32, 49 P. (2d) 1115, as follows:

"The rule that the mere arrest is sufficient to render inadmissible the fact of the accused's failure to deny accusatory statements made in his presence and hearing is supported by the weight of authority and certainly by the better reasoning."

The reasons given why the rule should not apply when the accused is under arrest is that silence at such a time is most conducive to his welfare whether he be guilty or

innocent; that he is not then under any duty to speak, nor is there any natural impulse to speak; that he has a right to remain silent, and that he should not, while under arrest, be in a position where he should be told that if he said anything it would be used against him and if he did not say anything that likewise would be used against him.

There is very grave doubt whether the appellant was under arrest at the time the statement was made, but we have decided to assume that he was under arrest and review the case from that standpoint. Upon the assumption we have made, the testimony was not admissible; however, it does not follow that the judgment should be reversed. The question arises whether the error was prejudicial. There is a presumption that error of this kind is prejudicial, and in reviewing a case it becomes necessary for the appellate court to give full consideration to the record and make a determination whether the presumption has been overcome and that prejudice did not result.

There was direct evidence that the complaining witness had received a severe cut in his right arm; that a knife had been used to do the cutting, and that the knife had been wielded by appellant. The appellant made no denial of these facts and produced no evidence in his own behalf. In cases of this kind, the test as to whether an error in the reception in evidence of a statement of the character before us is to be deemed prejudicial, is this: Unless we can say, after a careful perusal of the record, that had the statement been excluded the jury would probably not have rendered a different verdict, the admission of the evidence will be held to have been prejudicial. Applying this test to the undisputed testimony of the case, it seems very clear that the jury could not have been influenced by the statement made by the parties who brought appellant to the police officers.

Appellant claims the court erred in permitting counsel for respondent to cross-examine one of the witnesses called by respondent. The witness was a nurse who cared for the complaining witness when he was brought to the hospital right after the affray. She testified on direct ex-

amination that she cleansed and dressed the wound in the right arm of the patient. On cross-examination by counsel for appellant, she stated no artery had been cut and that she was familiar with the blood system of the human body. It was the theory of the respondent that an artery had been cut, and its counsel was permitted, over the objection of appellant, to interrogate the witness as to her knowledge of the human blood system, the evident purpose being to affect the weight to be given to her testimony that an artery had not been cut. The examination was responsive to the cross-examination by counsel for appellant, and we find no error in this respect.

The judgment is affirmed.

STEINERT, ROBINSON, JEFFERS, and MALLERY, JJ., concur.

MILLARD, J. (dissenting)—The statement, the accuracy of which I challenge, in the majority opinion that there is grave doubt whether appellant was under arrest at the time that Robert Farrell stated, "he [appellant] cut a man with a knife," can not be sustained by the blending and mingling of statements of fact, inferences, and conclusions. It is to quibble to even intimate that "there is grave doubt whether the appellant," who was charged with a felony, was under arrest at the time the statement of which appellant complains was made.

The record is clear that Chappell, a policeman, Boock, another policeman, were with one Triplett sitting in front of the police station, which is one-half block from the scene of the alleged assault made by appellant upon the prosecuting witness, at the time Farrell made the statement "he cut a man with a knife." The two policemen arrived at the station with the police wagon almost contemporaneous in point of time with the arrival of Farrell with appellant at that point. Farrell took appellant to the police station, at which point the police wagon then was, and Chappell accepted custody of the prisoner, whom he placed within the jail. At the same time, Chappell testified, that the statement was made, he "put him [appellant] under arrest of

course." Chappell did not, nor did Farrell, witness the fight between appellant and the prosecuting witness.

Farrell testified that he did not know what appellant did because he was not present at the time appellant is alleged to have cut the prosecuting witness. That appellant was under arrest at the time Farrell made the statement concerning appellant to the policeman, is established beyond peradventure of a doubt by the evidence. (See pages 4 to 6, 7, 9, 12, 13, 26, 44, 45, 46, 47, 49, 52, and 53 of the statement of facts.)

I reiterate for emphasis: Robert Farrell, who did not witness the altercation and knew nothing about the assault except what was related to him by others, arrested, as he had a right to do, appellant, whom he conducted a distance of one-half block from the scene of the crime and surrendered him to the policemen. One of those policemen was permitted to testify that Farrell, who knew nothing except what he had heard at third or fourth hand, when he delivered the prisoner at the station stated "he cut a man with a knife."

If, as was held in *Sullivan v. Seattle Electric Co.*, 51 Wash. 71, 97 Pac. 1109, 130 Am. St. 1082, the exclamations of a person are not admissible in evidence unless such exclamations relate to matters of fact to which such person might properly testify if called as a witness, surely the rule should be no less strict when the life or liberty of a citizen is at stake.

The rule announced in *State v. McKenzie*, 184 Wash. 32, 49 P. (2d) 1115, that mere arrest is sufficient to render inadmissible the fact of the failure of the accused to deny accusatory statements made in his presence and hearing, was breached in the trial of appellant in the case at bar.

It is not a sound rule that where a definite statement of a matter of fact is made in the presence or hearing of a party, so that he understands it, in regard to facts affecting him or his rights, that the failure of such party to reply to the statement is admissible in evidence as tending to show that he concedes the facts stated are true. In *Beck v. Dye*, 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, we

held that, to bring the testimony within the *res gestae* rule, it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or facts concerning which the declaration or statement was made.

A man, about whom a statement is made in his presence implicating him in a crime, should not be held on his failure to deny the statement to acquiesce in the truth of such statement. He has a constitutional right to remain silent. Our constitution, Art. I, § 9, clothes an accused with the right of silence, and, as stated in *Towery v. State,* 13 Okla. Crim. 216, 163 Pac. 331, L. R. A. 1917D, 491, it would be absurd where the constitution clothes the accused with the right of silence to say in one breath he has the right of silence, and in the next to hold that he may be forced to testify against himself by the very act of exercising that right. The correct rule is that, where a party charged with the commission of a crime is under arrest, and a third party in his presence makes a statement to the officers which tends to connect the accused with the commission of the crime, and the accused remains silent, such statement, and the fact that the accused remained silent, are not admissible in evidence against him.

Under state constitution, Art. I, § 9, the testimony as to the statement made by Farrell was inadmissible. If it is error to admit such evidence, it should be conclusively presumed that that evidence is prejudicial. One jurist observes that he refuses to get "worked up" over the constitutional rights of persons convicted. In other words, constitutional safeguards mean nothing if you are convicted, that jurist conclusively presuming that the defendant had a fair trial and was guilty because of the verdict.

One does not invoke safeguards until they are needed. If in time of need—not necessary at any other time—one may not be afforded the protection of the constitution, I cannot conceive of any purpose of writing such provisions into our constitution. A man is entitled to a fair trial, which means a legal trial. This presupposes that incompetent evidence will not be admitted. One could as validly

be tried, over his protest, without a jury or with less than the legally required number of qualified jurors, as he could be fairly tried by the admission of evidence which the constitution declares is inadmissible.

No matter how guilty we may believe a defendant to be, no matter how guilty he may be, he is entitled to a fair trial and should not be denied any right guaranteed to him by the constitution. Courts are prone to deprive the accused of constitutional safeguards in the desire to administer criminal justice. By the deprivation of an accused of constitutional safeguards, the accused is denied a fair trial, and the verdict of the jury and the judgment of the court entered thereon are as invalid as if the accused had been tried by a mob. The only excuse that may be offered by the court is the same as that advanced by the mob—the accused, we are convinced, was guilty.

Clearly, it was error to admit in evidence, in violation of the constitutional right of the accused, the statement made by Farrell. To hold that such error is not prejudicial, is to claim clairvoyant powers and is to arrogate to ourselves the attribute of omniscience, a quality inherent only in Deity.

Lord Chief Justice Scroggs, who died in 1683 at the age of sixty years, attained his high position by his contempt for the rights of the accused, his refusal to get "worked up" over the rights of the accused. That vile chief justice, politician that he was, when he found the executive had changed its mind in the Rye House Plot prosecutions, with slavish subservience like those who today cater to pressure groups, changed his mind.

When one statesman said that he would rather be right than be president, he met the flippant retort that he would be neither. Today there are men in public life who prefer to be elected and re-elected rather than be right. Too many of that group have their desire.

Scroggs' alter ego was George Jeffreys, who succeeded Scroggs as Lord Chief Justice of England. He, too, was guilty of the offense of endeavoring to convict by boldly attempting to pervert the rules of evidence. The life of

each of those two justices, in whom appeared in full perfection the most brutal qualities, should be studied, as such study might aid in the prevention of the growth of callous and inhuman feelings in courts.

Liberty is impossible unless we possess certain rights of personal security and immunity of which the state cannot deprive us. These must be preserved at all costs.

Doubtless, Samuel Untermyer had this in mind when he delivered an address in Philadelphia, Pennsylvania, April 9, 1910. His very pertinent observations respecting the duty of prosecuting attorneys I quote as follows:

"It is with sincere regret and reluctance that I assert that save in rare instances the modern Prosecutor does not stand between the People and the accused. He and his assistants too often measure the success of their labors by the number of convictions they have secured. It is a false and brutal conception of duty that is responsible for grave injustice, but it is none the less true that it exists."

In emphasizing the fact that what was said during the course of a trial was indelibly impressed upon the minds of those who heard the statements, an eminent jurist of this state observed, "One cannot unring a bell." I marvel at the audacity of appellate courts which declare their ability to unscramble the admissible and inadmissible evidence and say that the inadmissible evidence did not influence the jury.

The rule applied in the case at bar is inconsistent with the rule that, where an accused refuses to take the stand in his own behalf, the prosecuting attorney may not comment upon the failure of the accused to testify. In such case, as in the case at bar, the rule is bottomed upon the constitutional guaranty that an accused has the right of silence.

Pontius Pilate interpreted, no doubt, his heeding the clamor of the then seeming majority a proper exception to the Roman doctrine of trial of the accused in a Roman tribunal and a finding therein of guilt prior to infliction of penalty exacted for commission of crime. Perhaps he was anticipating the rule that centuries later exceptions to such

guaranty of protection of an accused were not static, but might be enlarged from time to time if thereby conviction of the accused could be effected—those future cases when, where the interest of criminal justice collided with statutory and rooted common-law and constitutional safeguards, the rights and privileges of an accused were contravened. So perverting the rules, Pilate endeavored to "wash his hands" of the blood of the victim he cravenly surrendered to the mob.

The argument, so glib as to smack of plagiarism, of one of our jurists is that *in this day and age* we should eschew legalism and be *realistic*. Legalism is the doctrine of strict conformity to law. I suppose the jurist to whom I refer would ask for the same laxity in the matter of the Ten Commandments. His argument is aptly answered in the following language from page 308, "The Soul of the Law," by William F. Clarke, where the author was writing on the subject of the constitutionality of the acts of some of the presidents of the United States:

"We are concerned with a willingness to scorn logic and law in favor of expedience—or in favor of a few more votes. The justification, 'face a situation realistically,' is so glib that it is hardly more than an evasion. A country should not be run 'realistically'; it should be run lawfully. Hitler runs Germany realistically, yet we call him a tyrant."

There may be little support for the view that judicial lynching is as reprehensible as lynching by the mob. In this era there is less reverence for the constitution than formerly. It seems as if today more are ready for applause and political preferment than there are for sacrifice or martyrdom. Few are ready to sacrifice office or pay a very small price for preservation of rights guaranteed by the constitution.

The judgment should be reversed with direction to the trial court to grant a new trial to appellant.

SIMPSON, J. (dissenting)—In addition to concurring in the result sought by Judge Millard in his dissenting opinion, I desire to submit an additional dissent to the majority opinion.

One under arrest or in custody, charged with crime, is under no duty to make statements concerning such crime; and statements tending to implicate him, made in his presence, although not denied by him, are not admissible against him. This rule has been adhered to by the Federal and state courts in this country. Below I list many of them. *State v. McKenzie,* 184 Wash. 32, 49 P. (2d) 1115; *Commonwealth v. McDermott,* 123 Mass. 440, 25 Am. Rep. 120; *Diblee v. State,* 202 Ind. 571, 177 N. E. 261; *Miller v. MacFarlane,* 97 Conn. 299, 116 Atl. 335; *State v. Roberts,* 149 La. 657, 89 So. 888; *Phillips v. Cason,* 153 La. 56, 95 So. 400; *Commonwealth v. Gangi,* 243 Mass. 341, 137 N. E. 643; *Commonwealth v. Anderson,* 245 Mass. 177, 139 N. E. 436; *Commonwealth v. Hamel,* 264 Mass. 564, 163 N. E. 168; *State v. Dengel,* 248 S. W. (Mo.) 603; *State v. Hogan,* 252 S. W. (Mo.) 387; *State v. Higgins,* 321 Mo. 570, 12 S. W. (2d) 61; *State v. Kissinger,* 343 Mo. 781, 123 S. W. (2d) 81; *Ellis v. State,* 8 Okla. Crim. 522, 128 Pac. 1095; *Cumpton v. Muskogee,* 23 Okla. Crim. 412, 225 Pac. 562; *Mackey v. State,* 30 Okla. Crim. 31, 234 Pac. 782; *Williams v. State,* 102 Tex. Crim. App. 251, 277 S. W. 389; *Weatherred v. State,* 129 Tex. Crim. App. 514, 89 S. W. (2d) 212; *People v. Smith,* 172 N. Y. 210, 64 N. E. 814; *People v. Marendi,* 213 N. Y. 600, 107 N. E. 1058.

In each of the cited cases, the court granted a new trial to the defendant because of the introduction of inadmissible testimony.

William Chappell, a police officer of the city of Raymond, testified:

"A. Well, I and Mr. Boock was in the police wagon and Sonny Tripplett and Bob Farrell, both, took Mr. Redwine down to the car and said he cut a man with a knife. . . . Q. Was the defendant present when the statement was made? A. Yes. Q. He heard it? A. Yes. Q. Did he deny it? A. Not that I know of. . . . Q. But he [appellant] was present when the first statements were made? A. He was. Q. You put him under arrest of course, didn't you? A. Yes."

Robert Farrell testified:

"Q. Did anyone take Redwine to the policeman that

night? A. Yes, I did. Q. You did yourself. That was after the stabbing or after the bleeding you saw? A. Yes. The same night. Q. In taking him to the policeman what did he say, if anything, to you? A. Did not say a thing. Q. Was anyone with you when you took him to the police? A. No. Q. What did you say to him? A. I just told him I thought he would be better off down there. Q. And you led him along, did you? A. Half a block. Q. I say you took him a half block to the policeman? A. Yes."

The statements made to officer Chappell by Tripplett or Farrell were not made under oath and were not impelled by any circumstances of *res gestae*. The statements repeated by the officer were hearsay, not subject to cross-examination and extremely prejudicial to the interest of appellant.

From the evidence, it is clear that appellant was under arrest at the time the statement was made by either Tripplett or Farrell. The evidence was clearly inadmissible. *State v. McKenzie, supra,* and other cases cited. And no amount of guessing about the effect upon the minds of the jurors can cure the defect. Under the rule of guessing as to the probable effect any evidence may have upon the minds of the jurors, we may, by judicial opinion, eliminate the provisions of the constitution and all laws passed by the legislature. I ask, how can this court, from the typewritten pages of the statement of facts, explore the minds of the jurors? It may be that this statement repeated by the police officer left a profound impression upon the minds of some or all of the jurors and overbalanced the scales of conclusion in favor of the state.

During the thirty years I spent in the practice of law and as a trial judge, I took part in the trial of hundreds of cases tried to juries. In none of them was I able to ascertain what evidence compelled a verdict. I submit that no other member of this court or of the bar of this state can read the minds of the jurors.

Article I, § 9, of our state constitution provides:

"No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

The majority opinion, by holding that an accused person must speak or admit guilt when accused, violates his constitutional right of being called to the stand and questioned. The approval by this court of the majority opinion means that in many instances hereafter a defendant may be tried with but one witness appearing against him, although there might rightly be a large number of witnesses of importance necessary to make out the case of the state, and the only witness so appearing might know absolutely nothing as to any material facts in the case. Incompetent testimony such as hearsay, opinion, and rumors might get to the ears of the jurors. A large crowd of interested people could make various accusations against the prisoner. The prisoner, exercising his right to refuse to discuss his case, might say nothing in reply. The result would be, as in this case, that the defendant would be deprived of his right of cross-examination; the jury would not have the privilege of seeing the witness so that it might pass upon his credibility; and the trial in our courts would be far from fair and impartial. From this time forward, the customary warning should be changed and the accused should be told when he is questioned: "If you say anything it will be used against you; if you do not say anything, that will be used against you, too." See *Commonwealth v. Kenney,* 12 Met. (53 Mass.) 235, 46 Am. Dec. 672.

The judgment should be reversed and the defendant granted a new trial.

BLAKE, J., concurs with SIMPSON, J.

BEALS, C. J. (dissenting)—I agree with Judges Millard and Simpson that the judgment appealed from should be reversed with instructions to grant appellant a new trial.