[No. 3228-1-III.   Division Three.   April 10, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. MANUEL VARGAS, *Appellant.*

*Craig J. Matheson* and *Matheson & Matheson,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for respondent.

Roe, J.—Kevin Davis was knifed three times at the Connell High School graduation party. He could not identify his assailant, but conflicting testimony implicated both Manuel Vargas and Ricky Trinidad. Vargas was convicted of second–degree assault.

One of the State's witnesses, Sergeant Thompson, was asked on direct examination about alleged intimidation of witnesses by the defendant.

Q All right, sir. What transpired out in the hallway, sir?
A Well, after we talked with Mr. Vargas and *he refused to give any statements* at that time, on the advice of an attorney we advised him to stay away from Pier Kinsey and Ricky Trinidad.

(Italics ours.) Sergeant Thompson's answer indicating a Fifth Amendment claim by defendant was not responsive and may be considered inadvertent. Defendant's experienced trial counsel did not object to Thompson's unsolicited testimony, but instead cross-examined the witness on that point as follows:

Q Officer Thompson, first of all, let's take the last part of your testimony. You say he refused to give a statement on the advice of his attorney. Where did you get that?
A I was sitting there when his attorney called me, because when he called his attorney he said he wasn't going to talk.
Q He said he had given a statement to the Sheriff's Office on a previous occasion right after this episode, hadn't he?
A I am not aware of that.
Q You are not aware of that?
A No, I am not.
Q You are not aware of a statement taken from Manuel by the Sheriff's Department?
A No, I am not.

. . .

Q Okay. I guess you are not aware of very much of the investigation, then, apparently, Officer Thompson?
A This is about the only contact I have had of this particular investigation.
Q I guess that explains it.

This could have been a trial tactic to discredit entirely the witness.

Vargas had testified earlier in the trial that he had cooperated fully with the authorities and had given a statement to the police. He now asserts that Sergeant Thompson's

unsolicited comment on his right to remain silent constitutes reversible error.

*Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) reversed on Fourteenth Amendment grounds a conviction for a narcotics law violation because the prosecution had cross-examined the defendant about his postarrest silence. The court held that postarrest silence is "insolubly ambiguous" and found a due process violation. *Doyle v. Ohio, supra* at 617. The *Doyle* rule applies equally to references made during the State's case in chief and in closing argument. *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979); *United States v. Impson,* 531 F.2d 274 (5th Cir. 1976), *cert. denied,* 434 U.S. 1050, 54 L. Ed. 2d 803, 98 S. Ct. 900 (1978); *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975), *cert. denied,* 427 U.S. 904, 49 L. Ed. 2d 1198, 96 S. Ct. 3189 (1976).

■ The *Doyle* reasoning, however, does not apply where the defendant's postarrest silence is being introduced to challenge the defendant's testimony as to his behavior following arrest. *Doyle v. Ohio, supra* at 619 n.11; *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975). Having brought his cooperation with the police into question, the defendant opened the door to a full development of that subject. *United States v. Mavrick,* 601 F.2d 921, 933 (7th Cir. 1979). The State is allowed to use defendant's postarrest silence to impeach his version of his postarrest conduct. *Stone v. Estelle,* 556 F.2d 1242 (5th Cir. 1977), *cert. denied,* 434 U.S. 1019, 54 L. Ed. 2d 767, 98 S. Ct. 742 (1978). *See State v. Thompson,* 88 Wn.2d 518, 564 P.2d 315 (1977).

Even if this comment by the officer were error of constitutional dimension which could be raised for the first time on appeal, we still hold it to be harmless error. The test of what constitutes harmless error has not always been clearly elucidated by the courts in the state of Washington.

In *State v. Redwine,* 23 Wn.2d 467, 471, 161 P.2d 205 (1945), the court set out this rule:

Unless we can say, after a careful perusal of the record, that had the [inadmissible] statement been excluded the jury would probably not have rendered a different verdict, the admission of the evidence will be held to have been prejudicial.

However, the United States Supreme Court decided in *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 828, 24 A.L.R.3d 1065 (1967) (comment on a failure to testify),

before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

In *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968), decided the year after *Chapman,* the court articulated the rule differently and in discussing prejudicial error stated:

But, where the defendant's guilt is *conclusively proven* by competent evidence, and *no other rational conclusion can be reached* except that the defendant is guilty as charged, then the conviction should not be set aside because of unsubstantial errors.

(Italics ours.) The *Chapman* case was not cited in the opinion.

The next year, in *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), the court referred specifically to the *Chapman* rule and affirmed it, but with reference to overwhelming evidence of guilt. The dissent of three justices suggested that *Chapman* had been compromised.

In *State v. Finnegan,* 6 Wn. App. 612, 495 P.2d 674, *review denied,* 81 Wn.2d 1001 (1972), *cert. denied,* 410 U.S. 967, 35 L. Ed. 2d 702, 93 S. Ct. 1450 (1973), the court quoted from the *Chapman* case at page 621, but then said that in the case at bench, which involved the omission of valid evidence, that the test of constitutional error would be the same. However, the court quoted from the Supreme Court's opinion in *State v. Mack,* 80 Wn.2d 19, 490 P.2d 1303 (1971), in which it referred to *State v. Martin, supra,*

which omitted mention of the *Chapman* rule. The court also stated that it was unable to find a distinction in the rule expressed in *State v. Martin, supra,* and *Chapman v. California, supra.*

In *State v. Spencer,* 9 Wn. App. 95, 510 P.2d 833 (1973), Division Three reverted specifically to the rule as stated in *Chapman,* but cited *Martin* as authority.[1]

In *State v. Haynes,* 16 Wn. App. 778, 786, 559 P.2d 583, *review denied,* 88 Wn.2d 1017 (1977) (Division Two), there was a blend of the two rules and the court stated:

> Having thus concluded, however, we are likewise convinced that admission of defendant's statements was harmless error. In the context of statements admitted in violation of the dictates of *Miranda,* we must be satisfied the error was harmless beyond a reasonable doubt when viewed in the light of other "overwhelming" evidence to convict[,]

citing *Chapman.* That seems to include the correct rule.[2]

The court held in *State v. Nist,* 77 Wn.2d 227, 235, 461 P.2d 322 (1969), that from reviewing the evidence, it is clear that there is overwhelming untainted evidence to support the defendant's conviction. There is no reasonable doubt that absence of certain evidence would not have affected the outcome of the trial. But the court still cited in *Nist* the *State v. Martin, supra,* rule (a post–*Chapman* case).

---

[1]*See also State v. Lowrie,* 14 Wn. App. 408, 413, 542 P.2d 128 (1975), *review denied,* 86 Wn.2d 1010 (1976) (Division Three), wherein the court stated: "Considering the nature of the testimony in the context of a conflicting record, as well as the substantial credibility questions with which the jury was concerned, we are unable to say that the admission of Bansmer's testimony was not prejudicial[,]" citing *State v. Martin, supra,* but no rule is given.

[2]*See State v. Mathes,* 22 Wn. App. 33, 35–36, 587 P.2d 609 (1978) (Division Two), which states:

"After a reading of the record, we cannot say that the error did not affect, or presumptively affect the final result of the trial. This record does not contain the strong independent evidence which can bring into play the 'harmless error' rule [citing *State v. Martin, supra*]."

In *Seattle v. Wakenight,* 24 Wn. App. 48, 52, 599 P.2d 5 (1979) (Division One), in discussing statements admitted in violation of *Miranda,* the court referred to *Chapman,* and also *State v. Nist, supra,* and held that the evidence which was properly admitted established beyond a reasonable doubt the defendant was guilty of the offense. We question whether this is the precise rule.

In *State v. Burri,* 87 Wn.2d 175, 182, 550 P.2d 507 (1976), our court adverts to the specific language of *Chapman* and correctly states:

> Moreover, an error of constitutional proportions will not be held harmless unless the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt."

Yet in *State v. Fricks, supra* at 396, the court appears to have reverted to the pre–*Chapman* and pre–*Martin* rule, stating:

> The State contends, however, that any constitutional error was harmless. We cannot agree. Defendant's credibility was at issue because he testified on his own behalf on disputed matters. His exculpating story was plausible. While the State has substantial evidence against him, its case is not overwhelming. Under these circumstances we cannot say that, had the references to appellant's post–arrest silence been excluded, "the jury would *probably* not have rendered a different verdict[,]"

(italics ours) citing *State v. Gibson,* 79 Wn.2d 856, 490 P.2d 874 (1971), which relied on *State v. Redwine, supra.*[3]

■ Although it may be argued that there is no difference between the rule that the evidence is so overwhelming that no other rational conclusion can be reached and the rule that error must be held harmful unless the court is

---

[3]*See State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980), in which the court, without discussing *State v. Fricks, supra,* returned to the *Chapman–Burri* rule. But in *State v. Edwards,* 93 Wn.2d 162, 167, 606 P.2d 1224 (1980), the court stated:

> In general, prejudicial error is one which affects or presumptively affects the final result of the trial[,]

citing *State v. Martin, supra.*

able to declare or believe that it was harmless beyond a reasonable doubt, we prefer the precise language of the United States Supreme Court case as found in *Chapman.*

Reviewing the language as admitted, cross–examination by counsel, and other evidence that defendant actually did make a statement to the police, we hold the jury could not have been misled, and we do believe the error in admission of the officer's testimony was harmless beyond a reasonable doubt.

Defendant also assigns error to the trial court's exclusion of certain hearsay he claims was admissible under the res gestae exception. He sought to introduce testimony of witnesses of statements they had heard from other people about the identity of the assailant. The prosecution's objection was sustained.

■ Generally, hearsay is inadmissible unless it falls within one of the well recognized exceptions. Under the res gestae rule as found in *Beck v. Dye,* 200 Wash. 1, 9–10, 92 P.2d 1113, 127 A.L.R. 1022 (1939), there are six essential elements to justify admitting hearsay as evidence as an exception under the res gestae. Element 6 states that the declaration or statement which was to be repeated by the witness in court must have been made by "one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made." The in–court witnesses were prevented from repeating the name of the other possible assailant whose name had been overheard by them. The name would be of someone other than the defendant. But the in–court witnesses were not able to identify those who made the conversation they overheard or to show that those making such statements had either participated in or witnessed the assault. Thus, it is not known whether the declarant or witnesses were present at the assault or whether they had gained their information from hearsay further removed. *See* ER 803(a)(1).

■ The general rule is also that in order to obtain appellate review of a trial court action excluding evidence,

there must be an offer of proof made. *Mason v. Bon Marche Corp.,* 64 Wn.2d 177, 179, 390 P.2d 997 (1964). The offer must be more than mere argument or colloquy of counsel, *Swanson v. Solomon,* 50 Wn.2d 825, 828–29, 314 P.2d 655 (1957), and counsel must make clear what he offers in his offer of proof. *Cochran v. Harrison Mem. Hosp.,* 42 Wn.2d 264, 272, 254 P.2d 752 (1953). The offer of proof must be sufficient to advise the appellate court whether the party was prejudiced by the exclusion of the evidence. *Donald W. Lyle, Inc. v. Heidner & Co.,* 45 Wn.2d 806, 814, 278 P.2d 650 (1954). *See* ER 103.

Here, there was no offer of proof, and no showing of prejudice. The record shows only colloquy as to the claimed exception to the hearsay exclusion.

This case essentially involved a factual determination as to which of two people committed an assault. The jury determined that the defendant did. We cannot substitute our judgment for that of the jury.

The judgment of conviction is affirmed.

GREEN, C.J., concurs.

MUNSON, J. (concurring)—I agree with the majority that *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) is not applicable, nor is the exclusion of certain hearsay testimony error, contrary to defendant's contentions. Of the 25 volumes of Washington Appellate Reports containing published opinions of the Court of Appeals, most contain at least one case citing the harmless error rule. All appear to have applied the rule, with some semantic variations, pursuant to the tests laid down in *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). While not all the cases cite *Chapman* or *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), I believe the import of all those cases is a recognition of the *Chapman* language, namely, that:

[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Chapman v. California, supra* at 24.

Furthermore, our Supreme Court has made similar semantic modifications without necessarily modifying the import of the *Chapman* rule. *State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980), citing from *State v. Burri,* 87 Wn.2d 175, 550 P.2d 507 (1976). In *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979), the court, using even a lesser standard, held the error could not be held harmless; I see no difficulty in harmonizing the language of *Fricks* with *Stephens* and *Burri.* There is merit to the suggestion, however, that we do adopt specifically the language of *Chapman* and hold to it without each judicial writer making semantic innovations on the test.