93 P.3d 212 (2004)
STATE of Washington, Respondent,
v.
Donald HOLMES, Appellant.
No. 50752-4-I.
Court of Appeals of Washington, Division 1.
July 12, 2004.
*213 E. Bradford Bales, King Co. Pros. Atty. Office, Seattle, WA, for Respondent.
David Bruce Koch, Attorney at Law, Seattle, WA, for Appellant.
BECKER, J.
A jury convicted Donald Holmes of child rape and child molestation. During the trial, a detective testified that Holmes did not "appear surprised" when arrested, and *214 Holmes did not deny the allegation of sexual abuse as the detective "would normally expect to see."[1] We agree with Holmes that the detective's testimony undermined his exercise of his constitutional right to remain silent. And because we cannot be confident that the impermissible comments did not affect the outcome of the case, we reverse the conviction.
The charges involved three sisters. Their mother had a nomadic lifestyle and the girls often stayed at the home of their great-grandmother, one of whose daughters was once married to Holmes. Holmes maintained a familial relationship with the great-grandmother and sometimes helped her take care of the girls by supplying transportation and groceries. Occasionally, the girls spent the night at Holmes' apartment.
At the trial, TH (age 10) testified that Holmes touched the outside of her "private area" three separate times while she was staying at his apartment.[2] She said that she did not initially tell her mother what was happening because Holmes would buy the girls things that their mother would not.
LE (age 8) testified that Holmes touched her three separate times  once in his car, once in his apartment, and once at her house. She said she was afraid to tell her mother because Holmes told her that he would "get" her and her sister if she told anyone.[3]
VE (age 6) testified that Holmes touched her on one occasion at his apartment. She said she was asleep on the couch when Holmes reached under her clothes and touched her on the inside of her vagina.
The oldest girl eventually told her mother. The police were notified. Each child, interviewed separately, disclosed the improper touching to the detectives. The detectives located Holmes at a tavern and arrested him after advising him of his right to remain silent.
A statement given by Holmes at the station house came into evidence. In the statement Holmes said he had no idea why the girls were claiming that he sexually abused them. His statement was consistent with his trial testimony, in which he denied ever touching the girls in an inappropriate way.
During the cross-examination of one of the detectives, defense counsel elicited agreement that Holmes was cooperative when arrested and while preparing his written statement. The prosecutor, on redirect, immediately picked up the topic of Holmes' cooperation:
[Prosecutor]: The defendant was advised that he was under arrest. You indicated that he was cooperative at the time?
[Detective]: Yes, he was.[[4]]
The prosecutor's next question produced the comments at issue in this appeal:
[Prosecutor]: Did you notice anything else about his demeanor when he was being placed under arrest?
[Detective]: He didn't appear surprised. When he was advised what the charge was, there wasn't any kind of denial or something that I would normally expect to see.[[5]]
Defense counsel did not object to the prosecutor's question or the detective's response. Defense counsel did, however, attempt to demonstrate on re-cross that Holmes' lack of surprise was insignificant:
[Defense Counsel]: ... you indicated that Mr. Holmes did not appear to be surprised when you arrested him.
[Detective]: That's correct.
[Defense Counsel]: In terms of reactions, people can have lots of different kinds of reactions when they get arrested, right?
[Detective]: This is true.
[Defense Counsel]: And you do know that Mr. Holmes had been arrested before?
[Detective]: Yes, I do.

*215 [Defense Counsel]: And his reaction then did not necessarily mean one thing or another if he decided to cooperate, right?
[Detective]: That's correct.[[6]]
In rebuttal closing argument, the prosecutor listed reasons why the jury should find Holmes to be lacking in credibility, and referred without objection to the detective's statement:
And don't forget the other things Detective Roth told you when he walked into that bar, restaurant, and they placed the defendant under arrest at 2:00 o'clock in the afternoon and told him he was being arrested for rape of a child, how did he react? How did Detective Roth tell you he reacted? He wasn't surprised, didn't appear surprised.[[7]]
Holmes contends the detective's comments invited the jury to infer his guilt from his failure to assert his innocence at the time he was arrested.
"No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; see also, Wn. Const. art. I, § 9. "The right against self-incrimination is liberally construed.... It is intended to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of his mind, or speak his guilt." State v. Easter, 130 Wash.2d 228, 236, 922 P.2d 1285 (1996) (citations omitted).
Post-arrest silence is "insolubly ambiguous" because the State is required to advise the person arrested of the right to remain silent. Doyle v. Ohio, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). It is fundamentally unfair, and a violation of due process, to allow an arrested person's silence to be used to impeach an exculpatory explanation offered by that person at trial. Doyle, 426 U.S. at 618, 96 S.Ct. 2240; State v. Romero, 113 Wash.App. 779, 786-87, 54 P.3d 1255 (2002). It is "highly prejudicial" for the State to suggest in this manner that silence casts doubt on the defendant's credibility. State v. Fricks, 91 Wash.2d 391, 396, 588 P.2d 1328 (1979); see Easter, 130 Wash.2d at 236, 922 P.2d 1285.
The State responds that defense counsel opened the door to the comments by getting the detective to agree that Holmes was cooperative when arrested.
The Doyle reasoning does not apply where a defendant claims to have provided information to the officers at the time of arrest and the State has evidence that actually the defendant remained silent. State v. Vargas, 25 Wash.App. 809, 812, 610 P.2d 1 (1980) citing Doyle, 426 U.S. at 619, 96 S.Ct. 2240 n. 11; see also, State v. Kendrick, 47 Wash.App. 620, 631, 736 P.2d 1079 (1987). In Vargas, the defendant testified that he had cooperated fully and had given a statement. Then an officer testified that the defendant refused to give a statement at one point when asked. Vargas, 25 Wash.App. at 810, 610 P.2d 1. The reviewing court rejected an argument that the officer's comment was an impermissible comment on silence. "Having brought his cooperation with the police into question, the defendant opened the door to a full development of that subject." Vargas, 25 Wash.App. at 812, 610 P.2d 1.
In Kendrick, the defendant testified and depicted himself as having been cooperative with the authorities because he turned himself in. He acknowledged, however, that on advice of counsel he had refused to talk to police or give a statement. The State brought out that the defendant never did give a statement. The prosecutor was allowed to argue that the defendant, far from being cooperative, had refused to talk so that he could wait and see what the State would be able to prove. The State's emphasis on the defendant's failure to make a statement to police was held not to be a due process violation under Doyle. The defendant  as in Vargas  had opened the door to comment by the State on the extent of his cooperation and the motive behind his action. Kendrick, 47 Wash.App. at 631, 736 P.2d 1079.
In the present case, Holmes did open up the subject of his cooperation with the authorities. *216 But this case is unlike Vargas and Kendrick in that the detective's comments did not contradict Holmes' portrayal of himself as cooperative. The detective agreed that Holmes was cooperative when arrested and while preparing his written statement. The comments at issue emerged in response to the next question, which was about a distinctly different subject: whether the detective had noticed "anything else" about Holmes' "demeanor when he was being placed under arrest."[8] The answer  Holmes didn't act surprised and didn't deny the charges as one "would normally expect"  was not an observation on the extent of Holmes' cooperation. It was an observation on his failure to proclaim his innocence, and it provided a basis for an inference of guilt. Such a comment, under Doyle, is fundamentally unfair. See United States v. Fairchild, 505 F.2d 1378, 1382-83 (5th Cir.1975) (defendant's silence was admissible "only for the purpose of rebutting the impression that he had actively cooperated with the police", and not as the basis for an inference of guilt.) See also Stone v. Estelle, 556 F.2d 1242 (5th Cir.1977).
We conclude this is not a case where review is barred by virtue of the defense having "opened the door." And we do not agree with the State's argument that the remarks were too fleeting to be more than a "mere reference" to silence. Cf. State v. Lewis, 130 Wash.2d 700, 706, 927 P.2d 235 (1996); State v. Sweet, 138 Wash.2d 466, 480-81, 980 P.2d 1223 (1999). Nor do we accept the State's characterization of the detective's remarks as permissibly stating observations of Holmes' demeanor. Testimony describing how a defendant reacts to emotional news will not necessarily be excluded as improper opinion testimony. State v. Day, 51 Wash.App. 544, 552, 754 P.2d 1021 (1988), review denied, 111 Wash.2d 1016 (1988). But the issue in this case is whether the testimony directed the jury's attention to protected silence, not whether it stated an opinion.
Because there was no objection below, Holmes may obtain review of the detective's remarks only if they amount to a manifest error affecting a constitutional right. RAP 2.5(a). A framework for analyzing whether a comment on silence is an error of constitutional proportions is found in State v. Romero, 113 Wash.App. 779, 790-91, 54 P.3d 1255 (2002). A direct comment on silence  such as a statement that a defendant refused to speak to an officer when contacted  is always a constitutional error. Romero, 113 Wash.App. at 790, 54 P.3d 1255. An indirect comment by a state agent may or may not be a constitutional error, depending on the answers to three questions:
First, could the comment reasonably be considered purposeful, meaning responsive to the State's questioning, with even slight inferable prejudice to the defendant's claim of silence? ... Second, could the comment reasonably be considered unresponsive to a question posed by either examiner, but in the context of the defense, the volunteered comment can reasonably be considered as either (a) given for the purpose of attempting to prejudice the defense, or (b) resulting in the unintended effect of likely prejudice to the defense?... Third, was the indirect comment exploited by the State during the course of the trial, including argument, in an apparent attempt to prejudice the defense offered by the defendant?....
Answering "yes" to any of these three questions means the indirect comment is an error of constitutional proportions meriting review using the constitutional harmless error standard, whether or not objection is first made at the trial court....
Romero, 113 Wash.App. at 790-91, 54 P.3d 1255.
The Romero analysis leads in this case to a conclusion of constitutional error. It is difficult to see the detective's comment as anything but a direct comment on Holmes' failure to deny the charges immediately upon being confronted with them. But even if the detective's remarks are assumed to be indirect, and even if they were unrehearsed and non-responsive to the question asked, they may well have been intended to prejudice the defense. And prejudice was the likely effect even if unintended, especially after the prosecutor *217 exploited the comment in closing argument.
A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. Easter, 130 Wash.2d at 242, 922 P.2d 1285. While Romero acknowledges at least a possibility that a curative instruction can mitigate the taint, Romero, 113 Wash.App. at 791, 54 P.3d 1255, the bell is hard to unring. The defense is in a difficult position. "Counsel must gamble on whether to object and ask for a curative instruction  a course of action which frequently does more harm than good  or to leave the comment alone." State v. Curtis, 110 Wash.App. 6, 15, 37 P.3d 1274 (2002). Here, defense counsel immediately recognized the prejudicial nature of the comment. Counsel forced the detective to agree, on recross, that Holmes' lack of reaction did not necessarily mean anything: "In terms of reactions, people can have lots of different kinds of reactions when they get arrested, right?" "This is true."[9] This question and answer may have diluted the comment to some degree but, in our judgment, not enough to neutralize it. The lingering suggestion was powerful: Holmes knew he was guilty, and for that reason was not surprised to be confronted with the charges.
While the consistent testimony of the three girls was compelling evidence against Holmes, the outcome of the trial depended on the jury's evaluation of his credibility as compared to theirs. Credibility determinations "cannot be duplicated by a review of the written record, at least in cases where the defendant's exculpating story is not facially unbelievable." State v. Gutierrez, 50 Wash.App. 583, 591, 749 P.2d 213 (1988). See also Romero, 113 Wash.App. at 795, 54 P.3d 1255. For this reason we are not in a position to say that the jury would necessarily have reached the same result if Holmes' denial of the charges had not been tainted by the improper comments.
Reversed and remanded for a new trial.[10]
NOTES
[1] Report of Proceedings (May 6, 2002) at 30.
[2] Report of Proceedings (April 30, May 2, 2002) at 420.
[3] Report of Proceedings (April 30, May 2, 2002) at 465.
[4] Report of Proceedings (May 6, 2002) at 30.
[5] Report of Proceedings (May 6, 2002) at 30.
[6] Report of Proceedings (May 6, 2002) at 31.
[7] Report of Proceedings (May 7, 2002) at 31.
[8] Report of Proceeding (May 6, 2002) at 30.
[9] Report of Proceedings (May 6, 2002) at 31.
[10] If Holmes is convicted after a new trial, the trial court may encounter a second issue raised in this appeal. Holmes was sentenced as a persistent offender on the basis of a prior conviction for indecent liberties. The State has appropriately conceded that this was error because the statute in effect at the time did not identify indecent liberties as a "strike offense." State v. Delgado, 148 Wash.2d 723, 726-27, 63 P.3d 792 (2003).