[No. 23346. Department Two. December 23, 1931.]

JOHN MIKKELSON, *Respondent,* v. PETER BALKEMA
*et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 404.

*Palmer, Askren & Brethorst* and *B. E. Lutterman*, for appellants.

*J. N. Ivey,* for respondent.

MAIN, J.—This action was brought to recover damages for the breach of a contract. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that a recovery could be had. Judgment was entered in favor of the plaintiff in the sum of $3,135.48, ''to be paid in the manner provided by law in such cases,'' from which the defendants appeal.

The facts are these: The Prairie Flour Mill Company is a corporation engaged in manufacturing flour, with its mill and principal place of business at Lewiston, Idaho. The Jones Piggly Wiggly Company is a corporation engaged extensively in the retail grocery business in this state. November 1, 1929, the mill company entered into a written contract with the Piggly Wiggly Company by which it sold two thousand barrels of flour at $5.50 per barrel. The flour was to be delivered within the next one hundred and twenty days, as ordered.

On the date that the contract was executed, the Piggly Wiggly Company ordered 470½ barrels of flour, which were shipped and paid for. No other flour was at any time shipped under the contract. The mill company frequently requested shipping instructions from the Piggly Wiggly Company, but these were not given. After the period mentioned in the contract had expired, the mill company sold to the Piggly Wiggly Company, upon another contract, two carloads of flour at $4.90 per barrel.

September 29, 1930, the appellants, Peter Balkema and W. H. Sanders, were appointed receivers for the Piggly Wiggly Company. About the middle of October

following, a representative of the mill company called upon one of the receivers to ascertain whether they were going to accept the balance of the flour which had not been shipped under the contract of November 1, 1929, and was informed that the flour would not be accepted. Thereafter a claim was presented and rejected, and, after obtaining permission from the court to do so, this action was instituted, with the result above stated.

■ It is first contended that the contract of November 1, 1929, was rescinded, as a matter of law, prior to the appointment of the receivers. This contention is based upon the fact that, after that contract had been entered into and was in default as to the time of shipment, the Piggly Wiggly Company purchased two other cars of flour at a different price. The evidence shows that the latter two cars were sold to the Piggly Wiggly Company in order that it might meet active competition in the sale of flour, to which it was then subject.

The appellants rely upon the rule that the legal effect of a subsequent contract covering the same subject-matter and made between the same parties as an earlier agreement, but containing terms inconsistent therewith, rescinds the earlier agreement. But that rule is not applicable to the facts in this case, since the second contract for two carloads of flour did not cover the same subject-matter as was covered in the first contract. The evidence shows that, when the first contract was made, the mill company contracted for wheat to satisfy that contract, and that it was its custom and practice, when it made a contract for the sale of flour, to immediately purchase, at the then price, wheat sufficient to cover the contract, and this, as one of the witnesses said, ''keeps us from gambling

on the market." The contract was therefore not rescinded.

 It is next contended that the breach of the contract, if any, occurred long prior to the appointment of the receivers, and that the evidence fails to show the difference between the contract price and the market price at the time of the breach. While it is true that the mill company repeatedly requested shipping instructions, and these were not given, it does not appear that there was a definite breach of the contract until it was breached when the demand was made upon one of the receivers that they accept the flour. The mill company was not required, at the expiration of the one hundred and twenty days, to insist on a breach at that time, but could permit the matter to be delayed, believing that, in course of time, the Piggly Wiggly Company would perform the contract and take the flour.

The appellants' argument that the evidence fails to show the difference between the contract price and the market price at the time of the breach, is based upon the assumption that the contract was breached prior to the appointment of the receivers, while the evidence shows the market value of flour after that time.

 It is next contended that, if the contract was not breached prior to the appointment of the receivers, the respondent failed to show that the receivers breached it. In this connection, it is the contention of the appellants that the refusal of one of the receivers to take the flour did not constitute a breach, but it required the action of both receivers. After the one receiver refused to perform the contract, a claim was presented and rejected. It is clear from the evidence that the receivers at no time contemplated that the contract would be performed by them.

Under the circumstances of this case, we think it

was not necessary that both the receivers join in the rejection of the contract in order to furnish a basis of an action for damages for the breach thereof. The act of the one receiver did not commit the estate to any affirmative obligation, as was the case in *Samuels v. E. F. Drew & Co.*, 7 Fed. (2d) 764. If the act of one of the receivers was such as to commit the estate to an affirmative obligation or undertaking, a different question would be presented from that which is now before us, and upon which we here express no opinion.

It is next contended that, if the contract was breached by the receivers, the measure of damages was not the difference between the contract price and the market price, but the profit that the mill company would have made had the contract been performed. This argument is based upon the erroneous assumption that the contract in question was one for the manufacture of flour, whereas, by its terms, it was a contract for the sale of flour. It being a contract for the sale of flour, the measure of damages was the difference between the contract price and the market or current price at the time of the breach. Rem. 1927 Sup., § 5836-64. This was the measure that was adopted and applied by the trial court.

Finally, it is contended that the respondent failed to prove the damages in the manner provided for in the contract. The contract provides that, if the purchaser shall fail to furnish shipping instructions or fail to perform any other obligation under the contract, the seller had three options, one of which was to accept damages in an amount which was the difference between the contract price and the price at which the "seller could purchase an equal quantity of the commodities covered by this contract." Section 64 of the uniform sales act (Rem. 1927 Sup., § 5836-64), in part,

provides that, where there is an available market for goods, the measure of damages is, in the absence of special circumstances, the difference between the

" . . . contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

We see no material difference between the measure of damages provided for in the contract and that provided for by the statute. Whether the respondent was limited to the measure of damages provided for in the option part of the contract and could not invoke the statutory measure, it is not necessary here to determine, because, even though the statutory method was applied by the trial court, the appellants were in no manner materially harmed thereby.

The judgment will be affirmed.

TOLMAN, C. J., MILLARD, BEALS, and HOLCOMB, JJ., concur.