[No. 29337. Department Two. November 29, 1944.]

E. S. JOHNSTON, *Appellant*, v. HERB OWENS, *Respondent*.[1]

*Frank P. Weaver*, for appellant.

*Moulton & Powell*, for respondent.

ROBINSON, J.—A true picture of the somewhat elusive issues involved in this appeal may be best developed by quoting the trial court's instruction No. 1:

"Plaintiff brings this action against the defendant for damages claiming the defendant failed to perform a contract whereby he agreed to sell to plaintiff 15,000 bushels of Turkey Red wheat for 97¢ per bushel, the wheat to be delivered in thirty days, or by October 15, 1942. The con-

'Reported in 153 P. (2d) 879.

tract is evidenced by plaintiff's exhibit 1 which you will have with you in the jury room.

"Plaintiff claims that defendant asked, from time to time, for extensions of time within which to deliver said 15,000 bushels of wheat and that he gave him extensions up to the 7th day of May, 1943 at which time defendant refused to deliver.

"Plaintiff further claims, and it is admitted by defendant, that defendant delivered 1,655 bushels for which he was paid, at 97¢ per bushel, $1,500.00 leaving a credit in his favor of $104.90.

"Plaintiff further claims that the market value of the wheat on May 7, 1943 was $1.135, making a difference of 16 1/2 cents per bushel between the contract price and market price on said date.

"And Plaintiff asks damages against the defendant at the rate of 16 1/2 cents per bushel for the difference between the number of bushels he agreed to deliver and the number of bushels delivered, under the contract, together with interest thereon at the rate of 6 per cent per annum from said May 7, 1943.

"The defendant admits he signed the contract to sell 'approximately 15,000' bushels of wheat to the plaintiff but claims the contract referred to wheat grown by him on farms rented and owned by defendant and that he advised plaintiff there was not in excess of 10,000 bushels subject to delivery.

"The defendant further claims that on October 16, 1942, the day after the contract became in default as to time of delivery and before he had delivered any wheat thereunder, he went to plaintiff to find out where he stood under the contract and that plaintiff told him his, plaintiff's, damages for wheat not delivered would be limited to the difference between the 97 cents per bushel and the market price on the 15th of October, 1942, the day he became in default, and that defendant relied upon the oral agreement and thereafter delivered the 1655 bushels, and that plaintiff is not now entitled to claim damages based on any date other than October 15, 1942."

The jury returned a verdict for defendant. The usual post-trial motions were made and denied, and the judgment entered on the verdict is here for review. The assignments of error relate wholly to the denial of these motions, and to instructions given and instructions refused. The prayer

is that judgment notwithstanding the verdict be ordered, or, in the alternative, a new trial.

As the trial court indicated in its instruction No. 1, the contract provided, "Delivery 30 Days," that is, since the contract was made September 15, 1942, not later than October 15, 1942. At that date, no delivery whatever had been made. It is admitted, however, that 1,655 bushels were delivered thereafter. There is evidence that plaintiff importuned the defendant on several occasions to deliver more, and that he agreed to do so, but, on May 7, 1943, flatly stated that he would make no further delivery.

The complaint alleges:

"That the defendant, on several occasions, requested of the plaintiff, extra time within which to deliver said wheat, which extra time was granted by the plaintiff to the defendant and the time of delivery of said wheat at defendant's request was orally extended to the 7th day of May, 1943."

As to this allegation, the court, while ruling upon a motion just prior to instructing the jury, said:

"You alleged that he asked for and received extensions of time from time to time in which to deliver the wheat up to May 8th, which he refused. There isn't one word of any testimony of the plaintiff that he asked for any extension of time. The whole testimony of the plaintiff is their calling him and his wife over the telephone and wanting him to deliver and his making excuses repeatedly why he hadn't delivered and his saying, 'I will deliver.' "

We do not understand that appellant contends otherwise. His trial theory was that he could recover on the original contract without showing any subsequent agreement to deliver. This theory was grounded upon this court's decision in *Mikkelson v. Balkema*, 166 Wash. 35, 38, 6 P. (2d) 404. On the basis of that case, he requested instructions as follows:

"Instruction No. 4. On the written contract executed on September 15, 1942 by the plaintiff and defendant, I instruct you that if you find that the wheat was not delivered by October 15, 1942 that the plaintiff was not required at the expiration of thirty days from the date of the contract

to insist on a breach of the contract at that time, but could permit the delivery of the wheat to be delayed believing that in course of time, that the defendant would perform his contract and deliver the wheat and that no breach of the contract existed until the defendant refused to deliver wheat under the terms of the contract, and that the plaintiff is entitled to damages as of the date the defendant breached the contract by refusing to deliver the wheat."

"Instruction No. 5. You are instructed that the contract of September 15, 1942 by which the defendant agreed to sell and the plaintiff agreed to purchase approximately 15,000 bushels of wheat did not terminate on the expiration of the 30 days for the delivery of the wheat, but continued in force until defendant informed the plaintiff of his refusal to deliver the wheat or until the plaintiff notified the defendant of his refusal to accept said wheat after the expiration of said 30 day period."

■ The court's refusal to give these instructions, and one or two more on the same theory, is assigned as error and argued at length. In answer to that contention, the respondent points out that the obligation was to deliver the wheat within thirty days after September 15th, that is, at least by October 15th, and that none whatever was delivered until the delivery time so fixed had passed. This, he says, was a complete breach of the contract, and attention is called to the fact that *Mikkelson v. Balkema* was an action for nonacceptance of goods, while this was an action for nondelivery of goods when they ought to have been delivered. It is further urged that paragraph (3) of Rem. Rev. Stat., § 5836-67 [P. C. § 6227-67], literally applies to the situation which is shown in the instant case. This paragraph reads as follows:

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods, at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

We have grave doubt as to whether the requested instructions state the law. Can it be, if no new contract was made,

that, after October 15th, the parties would be left in a position where the buyer could demand delivery if the price of wheat rose above the contract price, but refuse delivery if the price fell below that figure? However, it is unnecessary for us to decide whether or not the requested instructions state the law, for, in the light of the instructions the court actually gave, the plaintiff could not possibly have been prejudiced by the court's failure to give them. We quote from the instructions given:

"Instruction No. 2. There are several issues to be determined by you in arriving at your verdict.

"1. The contract covers 'approx', which means approximately, 15,000 bushels of Turkey Red wheat. By the use of the words approximately 15,000 bushels the parties had in mind some particular lot, or lots, of turkey red wheat which they estimated at 15,000 bushels. Under the evidence in this case you must find that they referred to the 1942 crop of turkey red wheat grown by defendant on the farm he owned, and the farms he rented, in Benton County, Washington, and you are to determine the number of bushels contracted to be sold which, under the evidence, cannot exceed, 10,855 bushels, and from the amount you find there must be subtracted the 1655 bushels delivered by the defendant. The burden is upon the plaintiff to prove to you the number of bushels covered by the contract, by a fair preponderance of all of the evidence in the case.

"2. *You are instructed that under the evidence, and the law, of this case plaintiff is entitled to a verdict against the defendant at the rate of 16½ cents per bushel for the number of bushels you find he failed to deliver, unless you find that the defendant has proved the defense set out in the next paragraph of this instruction.* (Italics ours.)

"3. The defendant contends that before he would deliver any wheat under the contract after the time for delivery had expired, he went to Mr. Johnston on October 16, 1942, the day after the time expired, to find out where he stood as to damages for not delivering within the time. He contends that Mr. Johnston agreed that his damages for any wheat the defendant did not deliver would be the difference between the 97 cents per bushel and the market price on October 15, 1942. He further contends that he relied upon this agreement, and in reliance thereon delivered the 1655 bushels a few days later and made promises to deliver more

until his last conversation with Mr. Johnston ·on or about May 7, 1943. Mr. Johnston denies all this defense.

"The burden is upon the defendant to prove to you, by a fair preponderance of all the evidence in the case, that the oral agreement was entered into and that he delivered the 1655 bushels, and promised to deliver more, in reliance thereon, and if you find he has so proven it, then your verdict must be for the defendant."

We have italicized paragraph two of the foregoing instruction because it seems to us that it is the key to the whole matter. The defendant excepted to paragraph two, and we think, advisedly. The plaintiff took no exception to paragraph two, and again we think, advisedly, because it gave him all that he had asked, and more, since it accepted and approved his whole theory of his right to recover on the original contract, in that it peremptorily instructed the jury that, as a matter of law, it must find a verdict in plaintiff's favor: ". . . unless you find that the defendant has proved the defense set out in the next paragraph of this instruction."

That was all that was left to the jury, and with this issue instructions Nos. 4, 5, 6, and 7 had nothing to do.

■ Appellant also assigns as error that the court erred in giving paragraph one of instruction No. 2, hereinabove quoted. We have examined the pertinent evidence and think the instruction was correct, but it cannot matter whether it was or not, for, if incorrect, it could only have been prejudicial as adversely affecting to some degree the amount of plaintiff's recovery, and, as it turned out, no recovery in any amount was had.

■ Under the circumstances shown, it must be assumed that the jury, following paragraph two of instruction No. 2, found that respondent proved the defense set out in paragraph three. We have carefully examined the evidence as to this phase of the case. The evidential conflict is almost wholly between the two principals in the action. Respondent's evidence, if believed by the jury, is sufficient to prove the defense. Appellant's evidence, if believed by the jury, is sufficient to disprove it. Under these circumstances, the

verdict cannot lawfully be set aside. Nor do we find any legal error in the proceedings which would warrant the granting of a new trial.

The judgment appealed from is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and MALLERY, JJ., concur.