[No. 32853.    Department Two.    December 30, 1954.]

DONALD W. LYLE, INC., *Appellant*, v. HEIDNER AND COMPANY, *Respondent and Cross-appellant*.[1]

[1]Reported in 278 P. (2d) 650.

*Burns Poe* and *Harry R. Lea,* for appellant.

*Eisenhower, Hunter, Ramsdell & Duncan,* for respondent and cross-appellant.

WEAVER, J.—Plaintiff, a corporation, commenced this action to recover the value of lumber purchased by and delivered to defendant, also a corporation, on August 27,

1951. Judgment was entered against defendant for $12,-966.48, together with interest at six per cent per annum, from September 10, 1951. There is no appeal from this portion of the judgment.

Defendant cross-complained, alleging three separate causes of action. Judgment was entered against plaintiff for $6,535 upon the first cause of action, and for $3,750 upon the second. Defendant abandoned its third cause of action during the trial. Plaintiff appeals from that portion of the judgment against it which is based upon defendant's cross-complaint. Defendant cross-appeals from the judgment in its favor, claiming the amount is inadequate.

For clarity, we refer to defendant Heidner and Company as vendee, and to plaintiff Donald W. Lyle, Inc., as vendor.

Vendee is a lumber broker. In the transactions we are considering, it purchased lumber on its own account for resale and export to England. Vendor is the owner of a lumber mill in Tacoma.

October 27, 1950, vendee (Heidner) sent to vendor (Lyle) two instruments, numbered 1492 and 1493, designated "Confirmation of Purchase." Each ordered one million feet board measure of three-inch lumber of various widths. The first called for shipment "Late November/early December;" the second, for shipment "Late December/early January" at "F. A. S. Vessel Tacoma Harbor." Copies were initialed by vendor and returned to vendee.

October 30, 1950, vendee, by the same procedure, ordered an additional one million feet board measure of three-inch lumber (order number 1496) and one million feet board measure of four-inch lumber (order number 1497) of various widths. Both orders provided for shipment "January/February/March" at "F. A. S. Vessel Tacoma Harbor." Both parties knew that the lumber of each order would be delivered in installments commensurate with the production capacity of vendor's mill.

Vendee's cross-complaint, which involves the subject matter of this appeal, presents the following issues:

First: that vendor breached order number 1492 by fail-

ing to deliver 738,924 feet board measure of lumber. To this, vendor pleaded that it had delivered no lumber on this order because it had canceled the order on December 16, 1950, when vendee had not, to that date, furnished ships to accept the lumber.

Second: (a) that vendor had breached order 1496 by failing and refusing to deliver all of the lumber according to the terms of the order; and (b) that vendee had been damaged by reason of an alleged overshipment of common lumber. Vendor denied both claims.

Third: that vendor had breached order 1497 because of an overshipment of common lumber contrary to the terms of the order. At the trial, vendee abandoned this cause of action and the last portion of its second cause of action.

Before we can reach these issues, it is necessary that we dispose of the motion to strike the statement of facts, or in the alternative, to strike the supplemental statement of facts made by vendee Heidner.

Vendor Lyle served and filed a 485-page statement of facts within the ninety-day period prescribed by Rule on Appeal 34, 34A Wn. (2d) 36. It is certified by the trial judge to contain

". . . all the material facts, matters and proceedings heretofore occurring in the said cause and not already a part of the record therein . . ."

No attempt was made to amend, correct, or amplify the statement of facts. It must be considered correct and complete as certified by the trial court. *Sutton v. Mathews,* 41 Wn. (2d) 64, 70, 247 P. (2d) 556 (1952); *Cook v. Vennigerholz,* 44 Wn. (2d) 612, 269 P. (2d) 824 (1954).

A fifty-six-page "Supplemental Statement of Facts" (as designated on the title page) or "Arguments after Trial" (as designated on the cover page) was filed by appellant after the period prescribed in Rule on Appeal 34, *supra,* had run. It does not contain "material facts, matters and proceedings" necessary to this appeal; it was not served and filed in accordance with the Rules on Appeal. It is stricken.

First, we consider the issues raised by the assignments

of error of the appeal and cross-appeal directed to the first cause of action of the cross-complaint, which is based upon an alleged breach of contract 1492.

November 24, 1950, vendee wrote vendor that 250,000 feet board measure of order 1492 had been booked for shipment on the S. S. "Cape Wrath," which it expected to load on or about December 10th. By letters dated December 5th, 12th, and 14th, vendee notified vendor that the "Cape Wrath" would receive part of the lumber of order 1492 on December 16, 1950, and that vendor should have its barge alongside at eight a. m. on that day.

December 16, 1950 (the day vendor delivered 261,076 feet board measure lumber, alongside the S. S. "Cape Wrath"), vendor wrote vendee as follows:

"Your order #1492 called for shipments during late November and early December. No shipments were made and the final date is now past. We are therefore cancelling this order. We have been seriously damaged due to your failure to take deliveries as planned. The mill has been unable to run a number of shifts account of congestion in the yard.

"Shipment being made on the Cape Wrath today applies on your order #1493."

Vendee immediately refused cancellation of order 1492. On December 27, 1950, counsel for vendor wrote vendee reiterating the cancellation.

Although it is not involved in this appeal, we note from the record that on November 28, 1950, vendee refused a purported cancellation of orders 1496 and 1497 also.

The evidence does not preponderate against the following findings of fact made by the trial court:

1. "That the order designated 1492 called for delivery from 'late November/early December.' That the terms used therein, to-wit: 'late November/early December' are ambiguous terms and a shipment calling for delivery in 'late November' or 'early December' calls for delivery at an indefinite time. That it is generally understood in the lumber industry that delivery in early December means delivery anytime from the first day of December to the fifteenth day of December, providing there is a vessel available for loading. It is likewise well recognized in the lumber industry, and particularly in the lumber export industry, and an ac-

cepted trade custom thereof, that the term 'early December' connotes a period of time extended, if necessary, for a period up to 30 days for the arrival of a vessel on which to ship the commodity in the event a vessel is not presently in port."

2. That in view of the trade custom, vendor had no right to cancel order 1492 on December 16, 1950;

3. That vendee correctly applied 261,076 feet board measure of lumber shipped on December 16, 1950, to order 1492;

4. That vendor breached order 1492 for one million feet board measure of lumber on December 27, 1950, when its counsel notified vendee of cancellation (thereafter, all invoices of three-inch lumber were designated for application on orders 1493 and 1496);

5. That the market value of three-inch dimension lumber cut for export on December 27, 1950, of the sizes and quantities described in order 1492, was $9.50 per thousand board feet in excess of the contract price as set forth in order 1492;

6. "That there is a well-recognized trade custom in the lumber industry in the Pacific Northwest that the delivery of a quantity of lumber within 5 per cent of the amount called for in an order, either short or over, constitutes full compliance with the order." (Finding of Fact XII.)

The vendee having pleaded the trade custom in explanation of the term "late November/early December" (as found by the trial court, quoted *supra*), it was not error to admit evidence concerning it. In various phases of commercial, business and professional activities, certain terms are used which have meanings peculiar to the persons engaged in that particular type of enterprise. Here, the evidence was admitted, not for the purpose of varying the terms of a written instrument, but to explain its meaning as understood by those engaged in the trade in which the term was used; for, without such explanation, the term is indefinite and ambiguous. See *Simons v. Stokely Foods, Inc.*, 35 Wn. (2d) 920, 216 P. (2d) 215 (1950), and cases cited; 1 Restatement, Contracts, 345, § 246; III Williston, Contracts (Rev. ed. 1936) 1875, § 650; Annotation, 89 A. L. R. 1228 (1934).

■ Vendee, by proper assignment of error in its cross-appeal, urges that the five-per-cent-tolerance allowance in the delivery of a quantity of lumber, "either short or over" the contract amount (see Finding of Fact XII, quoted *supra*), has no application when calculating damages arising from breach of contract for nondelivery.

This trade custom is akin to the doctrine of substantial performance and is intended for the protection and relief of those who have faithfully endeavored to perform their contract in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects. Vendor did not substantially perform contract 1492. He breached the contract and failed to deliver, in accordance to its terms, 738,924 feet board measure of lumber. Vendee was damaged $9.50 per thousand feet board measure, or $7,019.78, instead of $6,535 as calculated by the trial court.

There remains for consideration: (a) is there a shortage of lumber delivered on order 1496; and (b) if there is a shortage, what damages vendee suffered by nondelivery, as alleged in the second cross-complaint.

Order 1493 and order 1496 were both for one million feet board measure of three-inch lumber for identical amounts of each width. Shipment on order 1493 was to be made prior to shipment on order 1496.

The trial court found, and no error is assigned to the finding,

". . . that in shipping the remaining orders [1493 and 1496] to the defendant [vendee], the plaintiff [vendor] so co-mingled the lumber shipped on Orders numbered 1493 and 1496 in that it attempted to allocate portions of certain lots of lumber to one order and portions to the other, all contrary to the terms of said written orders, that it was impossible for the defendant [vendee] to keep said orders properly segregated."

Consequently, as installments of lumber were delivered by vendor, vendee allocated the shipments to order 1493 until the quantity required had been delivered. As further

shipments were received, vendee allocated them to order 1496, but varied this procedure when the segregation of grades and widths made it necessary.

It is apparent from the record that the parties are in agreement as to the amount of three-inch lumber shipped on orders 1492, 1493, and 1496. Mr. Heidner (vendee's president) testified that 1,863,843 feet board measure had been shipped. This is substantiated by the numerous certificates of inspection of the Pacific Lumber Inspection Bureau which are in evidence.

The following transpired when Mr. Lyle (vendor's president) was examined:

"MR. EISENHOWER: I would like to clear it up. If you exclude what you referred to as 1371-L [not involved in this action], then how much do you claim you have shipped?

" . . .

"THE WITNESS [Lyle]: 1,864,000 feet.

"MR. EISENHOWER: Well, to be exact, Mr. Lyle, isn't it 1,863,834 feet? [It is apparent counsel transposed the last two digits.]

"THE WITNESS [Lyle]: 843, yes; 834."

The shortage, then, on order 1496 is but a matter of arithmetic. The three orders required three million feet of three-inch lumber. The shortage of three-inch lumber on the three orders is 1,136,157 feet board measure. We have already disposed of a shortage of 738,924 on order 1492, and there is no contention that the one million feet board measure was not delivered on order 1493. Excluding it, the shortage of three-inch lumber on order 1496 is 397,233 feet board measure. We do not agree with vendor's argument that this method of computation assigns the alleged shortage of all three contracts to order 1496.

When it became apparent, during the trial, that vendee had applied the shipments in the manner we described, vendor sought to prove an alleged modification of order 1493. The trial court sustained an objection to this testimony.

We find no offer of proof in the record, and it is not shown exactly what vendor intended to prove. At one

point, counsel indicated that the alleged modification was material only to vendee's third cause of action (the over-shipment of common lumber).

In order to obtain appellate review of the exclusion of evidence by the trial court, there must be an offer of proof sufficiently definite and comprehensive to advise the appellate court whether or not the party was prejudiced by the exclusion of the evidence. *Sutton v. Mathews*, 41 Wn. (2d) 64, 67, 247 P. (2d) 556 (1952), and cases cited. The record of the instant case does not meet this test.

The trial court entered its finding concerning the shortage of lumber on order 1496, a matter which we have already examined. It found that "during the late summer" the market value of three-inch dimension lumber cut for export had increased fifteen dollars per thousand feet board measure over the price set by order 1496. It computed the damages accordingly.

To this method of computation, vendor makes three assignments of error: (1) that vendee's damages should be limited to five dollars per thousand feet board measure, the profit it would have received by reason of its contract for resale; (2) that if damages are to be assessed at the difference between the contract and the market value of the lumber, the market value should have been the value existing not later than the end of March, 1951; and (3) that damages should be limited to the difference between the actual cost paid by vendee when he purchased the lumber elsewhere to meet his resale commitments, and the contract price of order 1496.

▇ ▪ Generally, the measure of damages for breach of an obligation is the sum which will put the complainant in the same position as he would have been had the obligation been fulfilled. Vendor's contention that vendee's damages should be limited to five dollars per thousand feet board measure, the profit it would have received by reason of its contract of resale, does violence to this principle *under the facts of the instant case.* (Vendee's contract of resale is not

in evidence. We assume the five-dollar resale profit for the purpose of illustration.)

In order to meet its resale commitments, vendee replaced the lumber vendor should have delivered by purchasing it on the open market from other mills. It was required to pay fourteen dollars per thousand feet board measure *more* than the contract price of order 1496. Thus, damages of only five dollars per thousand feet board measure would not place vendee in the same position as he would have been had vendor fulfilled its contract. We are not repudiating the principle that, where it is known at the time the contract is made that the goods are being purchased for resale in a particular market, *so that the profits on such resale may fairly be said to have been within the contemplation of the parties,* the vendee, on failure of the vendor to deliver, may recover the expected profits, if not uncertain and remote, especially where the goods cannot be procured in the open market, as in *Hill's Inc. v. William B. Kessler, Inc.,* 41 Wn. (2d) 42, 246 P. (2d) 1099 (1952); but the principle is not applicable to the facts of the instant case. Vendor misinterprets the application of RCW 63.04-.680 (2) (quoted *infra*) to situations such as this. *Holden v. Schafer Bros. Lbr. & Shingle Co.,* 23 Wn. (2d) 202, 160 P. (2d) 537 (1945), is distinguishable.

It appears from the certificates of inspection that vendor cut four-inch lumber for vendee as late as July 30, 1951, for delivery in August, even though order 1497 provided for delivery "January/February/March," the same delivery date as appears in order 1496. Mr. Heidner (vendee) testified that it was not until June or July, 1951, that it became evident that vendor was not going to make further deliveries of three-inch lumber. The record supports the finding

". . . that the defendant [vendee] did not know until late summer of 1950 [1951] that the plaintiff [vendor] was not going to complete all of the orders placed with it."

Under the circumstances, the vendee was not required, at the end of March, to insist on a breach at that time, but could permit the matter to be delayed until ven-

dor indicated that it would not perform the contract. *Mikkelson v. Balkema*, 166 Wash. 35, 38, 6 P. (2d) 404 (1931); 3 Williston on Sales (Rev. ed. 1948) 294, § 599.

Thus, the time is fixed at which vendee's damages accrued, and there is no merit to vendor's contention that vendee's damages accrued not later than the end of March, 1951.

The measure of damages is the sole question remaining.

Section 67 of the sales act (RCW 63.04.680; Rem. Rev. Stat., § 5836-67) provides:

"Action for failing to deliver goods.

"(1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

"(2) The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

"(3) Where there is an available market for the goods, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time when they ought to have been delivered, or if no time was fixed, then at the time of the refusal to deliver."

It is undisputed that the replacement lumber was purchased for fourteen dollars per thousand feet board measure more than the contract price. Mr. Heidner testified that it "cost" $15.30 per thousand feet more than the contract price. It is apparent, however, how he reached this conclusion. Order 1496 provided for a two per cent discount for cash within ten days. Two per cent of the basic price of the lumber covered by order 1496 is $1.30, which, added to the actual cost, totals $15.30. The discount was not available on the replacement orders.

The trial court found that the market value of the lumber had increased fifteen dollars per thousand feet board measure and that

". . . defendant [vendee] was required to purchase the shortages in the open market at a price of $15.00 per

thousand B.M. over and above the contract price of said lumber in order to fulfill its commitments."

The purchases in the open market were for the account of the vendor. When vendee refused a purported cancellation of orders 1496 and 1497 by vendor on November 28, 1950, it requested fulfillment of the orders and wrote, "Otherwise, we, of necessity, will be forced to repurchase for your account."

Prior to the sales act, if the vendor refused to deliver and the vendee purchased upon the open market at less than the market price, the vendee could only recover for his actual loss. *Theiss v. Weiss*, 166 Pa. St. 9, 31 Atl. 63, 45 Am. St. 638 (1895); *Morris v. Supplee*, 208 Pa. 253, 57 Atl. 566 (1904); *May Hosiery Mills v. Munford Cotton Mills*, 205 Ala. 27, 87 So. 674 (1920).

■ Section 67 of the sales act does not change the rule. Subparagraph (2) of RCW 63.04.680 (quoted *supra*) qualifies the specific provisions of subparagraph (3) and limits vendee's damages to "the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract."

■ When the vendor failed to deliver the balance of the lumber under order 1496, the vendee had the right to purchase the lumber elsewhere, and its measure of damages (in the absence of special circumstances showing proximate damages of a greater amount) is the difference between the contract price and the price paid to obtain the lumber, provided, however, the price paid does not exceed the market price.

We do not believe the two per cent discount, provided for in order 1496, is such a "special circumstance" that would allow damages to vendee greater than the difference between the contract price and the cash actually paid for the replacement lumber. Vendee may or may not have taken advantage of the discount had the lumber been delivered. It elected to waive the discount provision on a portion of the lumber delivered under order 1497. To hold otherwise,

would be to introduce an uncertain element based upon speculation.

Vendor's contention that vendee's damages should be limited to fourteen dollars per thousand feet board measure is well taken.

In summary:

That portion of the judgment from which the appeal and cross-appeal have been taken is modified to read as follows:

It is further ordered, adjudged and decreed that the defendant be and is hereby awarded judgment against the plaintiff on its first cause of action in its cross-complaint in the sum of $7,019.78, and that it be and is hereby awarded judgment against the plaintiff on its second cause of action in the sum of $5,561.26, or a total judgment of $12,581.04.

Although the final result has been to increase the amount of the judgment entered on the cross-complaints, each party has presented assignments of error resulting in the modification of judgment. Therefore, each party will bear its costs on appeal. Rule on Appeal 55(1), 34A Wn. (2d) 58, as amended, effective March 1, 1954.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.