# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Marriage of )  No. 74318-0-I
)
KATHRYN SUZANNE WARD, )
)
    Appellant, )
)
  and )
)
KENNETH EUGENE WARD, )  UNPUBLISHED OPINION
)
    Respondent. )  FILED: October 31, 2016
)

VERELLEN, C.J. — A parenting plan providing for "Possinger[1] review" in the

near future allows consideration of any plan provision governed by the parenting plan

standards of RCW 26.09.187. There is no need to satisfy the modification standards

of RCW 26.09.260.

Kathryn Ward argues the trial court abused its discretion and exceeded its

authority in 2015 by changing nonresidential provisions of the 2013 parenting plan.

Although there are some discrepancies in the trial court rulings, we conclude the trial

court did not abuse its discretion by granting Kenneth Ward relief consistent with

RCW 26.09.187 as part of its authorized Possinger review of the 2013 parenting

plan.

---

[1] In re Marriage of Possinger, 105 Wn. App. 326, 19 P.3d 1109 (2001).

We also conclude the trial court did not abuse its discretion in limiting the scope and duration of the mother's offer of proof regarding a dispute between the father and the nanny.

But we agree with Kathryn that the trial court should not have altered a no-contact order to allow supervised contact with the paternal grandfather because there was no evidence presented to support such a change.

We reverse the portion of the 2015 final parenting plan allowing the paternal grandfather supervised visitation and affirm the trial court's other orders and rulings.

## FACTS

Kathryn Ward (the mother) filed a petition to dissolve her marriage to Kenneth Ward (the father). Before trial, the mother and the father reached an agreement on a parenting plan (2013 parenting plan) for their three children. Because the father was in early sobriety, the 2013 parenting plan limited his residential time with the children. Once he met certain benchmarks in his recovery, his residential time under the 2013 parenting plan could be increased.

As part of the residential schedule section of the 2013 parenting plan, subsection 3.2, "School Schedule," provided, "This parenting plan is entered under the procedure utilized in In re Marriage of Possinger and will be reviewed pursuant to Possinger the August prior to [the oldest child] beginning kindergarten."[2] Among other provisions, the 2013 parenting plan provided for no contact between the children and their paternal grandfather, the mother makes major decisions, the

---

[2] Clerk's Papers (CP) at 520.

mother may require the father to submit to urinalysis (UA) testing if she suspects he is not sober, and the parties submit disputes to a mediator.

In 2015, the mother filed a petition to modify the 2013 parenting plan under RCW 26.09.260. The mother asserted a substantial change of circumstances had occurred because the father had moved to Lake Tapps. She requested a reduction in the father's residential time, alleging he was consuming alcohol again, and claimed the father was not following mandatory provisions of the 2013 parenting plan.

The father did not file a counter-petition to modify, but moved for a <u>Possinger</u> review. The father's proposed parenting plan would have increased the children's residential placement with him.

The court set both the mother's modification and the father's <u>Possinger</u> review for trial and appointed a guardian ad litem (GAL). The court directed the GAL to address "all issues relating to development of the parenting plan, and the Guardian ad litem shall also report to the court on any other issues discovered that could affect the safety of the children."[3]

In her written report, the GAL recommended several changes to the 2013 parenting plan: counseling for both parents, joint decision making on all major decisions, including some extracurricular activities, and limits on the mother's authority to compel UA tests. At trial, the GAL also recommended eliminating regular UA testing for the father, giving a case manager the ability to request UA testing, deleting sole decision-making authority for the mother, selecting a post-decree case

---

[3] CP at 454.

manager to resolve disputes over decision making, and requiring the parents to participate in the Family In Transition program.

In its oral ruling, the court revised the mother's authority to compel UA tests, directed both parents to use common courtesy during exchanges, ordered counseling through New Ways for Families, adjusted decision-making provisions, and ordered the father and the mother to hire a case manager to help them manage disputes.

At the presentation hearing, the father requested a change to the paternal grandfather no-contact provision. Over the mother's objection, the court allowed the paternal grandfather supervised contact.

The court implemented several changes in its written 2015 final parenting plan:

> 3.10 Restrictions. The court changed the mother's ability to request the father to take a UA test and revised the original no-contact provision to allow *supervised* contact between the paternal grandfather and the children;

> 3.11 Transportation Arrangements. Agreed-upon transportation provisions were added;

> 3.13 Other. The father and the mother were ordered to attend and complete the New Ways for Families Program. The court also changed the time requirement for the father to provide the mother with his work schedule;

> 4.2 Major Decisions. Decision making regarding counseling was changed from the mother to being a joint decision. Decision making concerning religious upbringing was changed from the mother to either parent's decision. Joint decision-making provisions also included tattoos prior to 18, body piercing prior to 18, marriage prior to 18, military prior to 18, and driver's licenses, and the notice requirement for nonemergency decisions was changed;

5 Dispute Resolution.  A post-decree case manager rather than a mediator was provided for to assist the parents in resolving disputes;

6 Other Provisions.  Telephone use provisions were extended to allow reasonable texts, emails, video contact, or other technology as may come available and is appropriate for the children's use.  A firearm safety provision was added.  The mother was ordered not to remind the father about the children's activities.  Both parties were ordered to act with civility during exchanges.

In addition to the 2015 final parenting plan, the trial court entered its November 2, 2015 order, addressing both the mother's motion to modify and the father's Possinger review.  The court concluded that the mother failed to meet her burden to prove the elements for a major modification:

> The custody decree/parenting plan/residential schedule should not be adjusted *because none of the statutory reasons set forth in RCW 26.09.260(10) apply.*
>
> Despite this, both parents are ordered to participate in classes/coaching to assist them in their communication with each other and to alleviate the acrimony between the parents, especially during child exchanges.  A post-decree case manager is also appointed to assist the parents.  Finally, this Court has ordered certain conduct during exchanges.  These provisions are in the child's best interests.[4]

In section III of the order, the court stated:

> The petition to modify/adjust the custody decree or parenting plan/residential schedule is denied.
>
> Other:  This court has reviewed the residential provisions of the November 2013 Permanent Parenting Plan pursuant to In Re Possinger, as contemplated and set forth in the November 2013 Permanent Parenting Plan.
>
> This Court does not have authority to *modify* the Decision Making Provisions in the November 2013, Parenting Plan.  Despite this,

---

4 CP at 450 (emphasis added).

the court has *modified* the decision making provision in one respect to adopt the parents' agreement regarding extracurricular activities.[5]

The mother appeals.

## ANALYSIS

### I. Parenting Plan

The mother argues the trial court abused its discretion and exceeded its authority when it modified nonresidential provisions of the 2013 parenting plan.

This court reviews a trial court's ruling concerning parental decision making for abuse of discretion.[6] The burden is on the appellant to prove an abuse of discretion.[7] A trial court's decision is exercised on untenable grounds or for untenable reasons when it relies on unsupported facts or applies the wrong legal standard.[8] Should the court adopt a view that no reasonable person would take despite applying the correct legal standard to the supported facts, the court's decision is manifestly unreasonable.[9]

### (i) Provisions Subject to *Possinger* Review

The mother argues the nonresidential provisions were not subject to Possinger review. But consistent with Possinger and RCW 26.09.187, the trial court had authority to reach any parenting plan issue.

---

[5] CP at 451 (emphasis added).

[6] In re Marriage of Jensen-Branch, 78 Wn. App. 482, 490, 899 P.2d 803 (1995).

[7] Lewis v. Simpson Timber Co., 145 Wn. App. 302, 328, 189 P.3d 178 (2008).

[8] Id. (quoting Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006)).

[9] Id. (quoting Mayer, 156 Wn.2d at 684).

The "'major purpose behind the requirement of a detailed permanent parenting plan is to ensure that the parents have a well thought out working document with which to address the future needs of the children.'"[10] Trial courts have the authority under Possinger to defer the permanent and final resolution of parenting issues for a short time following entry of the decree of dissolution of marriage.[11] When conducting such a review, the court applies the criteria in RCW 26.09.187 for *establishing* a permanent parenting plan rather than the criteria in RCW 26.09.260 for *modifying* a parenting plan.[12]

In Possinger, the trial court awarded the father substantial residential placement, but the school schedule subsection of the parenting plan provided for review in one year to determine if the plan was workable.[13] After the review, the trial court awarded primary residential placement to the mother and altered the decision-making provisions of the plan.[14] On appeal, this court upheld both residential and nonresidential changes. Possinger focused on the best interests of the child.[15] This court reasoned:

---

[10] Possinger, 105 Wn. App. at 335 (quoting In re Marriage of Pape, 139 Wn.2d 694, 705, 989 P.2d 1120 (1999)).

[11] Id. at 336-37. Possinger does not stand for the proposition that trial courts may retain an open-ended reservation for parenting plan review. See In re C.M.F., 179 Wn.2d 411, 425-27, 314 P.3d 1109 (2013); In re Marriage of Adler, 131 Wn. App. 717, 724-26, 129 P.3d 293 (2006).

[12] Possinger, 105 Wn. App. at 337 (emphasis added).

[13] Id. at 329-330.

[14] Id. at 331.

[15] Id. at 334-35 ("'In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental

"The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, *the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents* or *as required to protect the child from physical, mental, or emotional harm.*"[16]

The review authorized in Possinger allows the trial court to apply RCW 26.09.187 to any parenting plan issues.

The mother analogizes to In re Marriage of Shryock, but we do not find any helpful parallels.[17] In Shryock, a father petitioned to modify a permanent parenting plan under RCW 26.09.260(2)(b).[18] Despite finding that none of the statutory reasons for modification under RCW 26.09.260 were present, the trial court substantially reduced the father's residential time with the child and granted the mother sole decision-making authority.[19] The trial court abused its discretion because it modified an original parenting plan after it had found there were no statutory reasons justifying a modification under RCW 26.09.260.[20] Shryock, decided six years before Possinger, was limited to the criteria for modification under RCW 26.09.260. But here, consistent with Possinger, the trial court performed its analysis using RCW 26.09.187.

---

importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests.'") (quoting RCW 26.09.002).

[16] Id. (quoting RCW 26.09.002) (emphasis added).

[17] 76 Wn. App. 848, 888 P.2d 750 (1995).

[18] Id. at 849.

[19] Id. at 852.

[20] Id. at 851-52.

The mother also argues the language and location of the Possinger provision in the 2013 parenting plan, together with the father's narrow request for relief, limited the scope of the trial court's Possinger review. But section 3.2 of the 2013 parenting plan expressly provided, "*This parenting plan* is entered under the procedure utilized In Re Marriage of Possinger and *will be reviewed* pursuant to Possinger *the August prior to [the oldest child] going to kindergarten.*"[21] This language specified *when* the Possinger review would occur; it did not purport to restrict the *scope* of that review.

The mother notes that the November 2, 2015 order recites the court "has reviewed the residential provisions of the November 2013 Permanent Parenting Plan pursuant to In Re Possinger, as contemplated and set forth in the November 2013 Permanent Parenting Plan."[22] But we do not read this as a concession that the scope of the Possinger review was limited to residential provisions. Notably, it is clear that the trial court focused on the RCW 26.09.187 criteria as to both residential and nonresidential provisions.

And the father's narrow proposed order did not compel the trial court to ignore problems that made the existing plan unworkable. Many aspects of a parenting plan are interrelated. For example, a lack of civility in handing off a child can frustrate residential provisions, contrary to the best interests of the child. It would be inconsistent with the underlying purpose and rationale of Possinger and RCW 26.09.002 to artificially limit the trial court to a residential-change-or-nothing review.

---

[21] CP at 520 (emphasis added).
[22] CP at 451.

The mother challenges the change in alternative dispute resolution from a mediator to a case manager with authority to make binding recommendations. She contends RCW 26.09.184 limits the court to counseling, mediation or arbitration. The statute provides, "A dispute resolution process *may* include counseling, mediation, or arbitration by a specified individual or agency, or court action."[23] Commentators recognize that other choices are available:

> The mandatory parenting plan form lists three possible choices for dispute resolution, counseling, mediation, or arbitration although the parties are free to list another option if it will be useful for them. For example, the use of a "Parenting Coordinator" has seen considerable recent favor. The parenting coordinator is usually a mental health professional or attorney. The parties agree to use the individual as a form of "private referee" on minor parenting issues.[24]

The 2015 final parenting plan here provides the case manager may make recommendations "which the parties will follow until any objection to those recommendations are sustained by this Court upon application to the King County Superior Court Family Motions Calendar. . . . The parties have the right of review from the dispute resolution process to the superior court.[25]

The mother cites no authority exploring whether this "case manager" dispute resolution provision is a form of "private referee" or arbitration combined with the mandated right of review to superior court. The mother's "passing treatment" of the statute is not meaningful briefing on the question of what limits apply to alternative

---

[23] RCW 26.09.184(4) (emphasis added).

[24] 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW §33.22, at 320 (2d ed. 2015).

[25] CP at 426.

dispute resolution in parenting plans.[26] On this limited briefing, the mother does not establish a basis for any relief.

There are discrepancies in the trial court's November 2, 2015 order and its oral decision.[27] More than once, the court refers to its lack of authority, then seems to suggest that it is ordering changes anyway. But the mother's reliance on such apparent inconsistencies is not compelling. For example, the court cites RCW 26.09.260(10) in its statement that it has no authority to alter nonresidential provisions, but in the subsequent paragraph, the court ordered the parents to participate in classes "to assist them in their communication with each other and to alleviate the acrimony between the parents, especially during child exchanges. . . . These provisions are in the children's best interests."[28] We read this as a direct reference to RCW 26.09.187(1)(a) standards, consistent with a Possinger review.

At one point in the oral decision, the trial court observed that it did not have authority under Possinger to alter the sole decision-making provisions of the 2013 parenting plan.[29] Additionally, in its November 2, 2015 order, the court noted that it did not have authority to change decision-making provisions under RCW 26.09.260, but adopted the parents' agreed changes to scheduling extracurricular activities and

---

[26] West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)); RAP 10.3(a)(6).

[27] It appears that the written orders were drafted by the mother, even though she had not prevailed.

[28] CP at 432.

[29] See Report of Proceedings (RP) (Sept. 23, 2015) at 1042.

transportation to such activities.[30] The mother does not challenge the agreed changes. As to the other changes to decision-making provisions, Possinger affirmed changes to decision-making provisions of a parenting plan. Even if the trial court was confused about the extent of its authority, its changes to decision-making provisions were consistent with the application of RCW 26.09.187 standards as part of a Possinger review.

Most importantly, in its oral decision, the trial court carefully worked through the RCW 26.09.187 standards. Despite some discrepancies, the oral and written decisions, viewed in context, reflect that the trial court granted the father relief applying the standards of RCW 26.09.187, consistent with a Possinger review.

We conclude the trial court did not exceed its authority or abuse its discretion when it altered nonresidential provisions of the 2013 parenting plan. The trial court had the authority under Possinger, RCW 26.09.002, and RCW 26.09.187 to make changes in the best interests of the children. The GAL report and testimony supports the trial court's findings of fact. In turn, those findings support the trial court's conclusions of law making changes to both residential and nonresidential provisions of the parenting plan.

*(ii) Provision Ordering No Contact With Paternal Grandfather*

The mother also argues the trial court abused its discretion when it modified the provision ordering no contact with the paternal grandfather to supervised contact. We agree.

---

[30] See CP at 451, ¶ 2.9

The GAL report did not mention the provision, and the trial court did not receive any evidence on the issue. The father made a single reference to the paternal grandfather during his closing argument. The no-contact provision was not raised until the presentation hearing. After the mother objected, the court said "Well, I'm going to do it anyway," explaining that "when you have what I'm assuming to be an aging parent, to indicate no contact with the children, hypothetically, what if the grandfather is critically ill and is dying and his children -- the father wants the children to be able to say good-bye?"[31]

Because the record at trial contained absolutely no evidence concerning this provision, the court could only offer its own hypothetical factual scenario to support its decision. The trial court abused its discretion when it changed the paternal grandfather no-contact provision in the absence of any evidence supporting such a decision.

## II. *Proffer of Evidence*

The mother contends the trial court prevented her from making a sufficient offer of proof for appeal. We disagree.

Mikayla Thompson, the children's nanny, testified at trial. The court sustained the father's objection to a line of questioning about two interactions between the father and Thompson. The mother asked to make an offer of proof. The mother proffered that the father had not made payments to Thompson in the last two months in full, and that

---

[31] RP (Oct. 15, 2015) at 1072.

> [d]uring the text message exchange where she was trying to get her check, that that, combined with her picking up--[the father] referring her to pick up a check from him at the McDonald's in the Maple Valley area where she live[d] in the summer of 2014, where he pulled up in a large truck without his shirt on, sunglasses, would not get out of the truck.[32]

The father objected on relevance grounds. The trial court allowed the mother to continue. Counsel did so, stating:

> And that he would not get out of the truck, made her come to the truck, and then as a result of that [Thompson] felt very intimidated.[33]

When the father renewed his objection, the court ruled that any additional proffer would be "inappropriate."[34]

An offer of proof is one means of preserving an issue for appeal.[35] "An offer of proof performs three functions: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review."[36] "'The offer of proof must be sufficient to advise the appellate court whether the party was prejudiced by the exclusion of the evidence.'"[37] The trial court has discretion regarding offers of proof.[38]

---

[32] RP (Sept. 15, 2015) at 356.

[33] Id. at 356-57.

[34] Id. at 357.

[35] ER 103(a)(2); Teter v. Deck, 174 Wn.2d 207, 221, 274 P.3d 336 (2012).

[36] Thor v. McDearmid, 63 Wn. App. 193, 204, 817 P.2d 1380 (1991).

[37] Brougham v. Swarva, 34 Wn. App. 68, 81, 661 P.2d 138 (1983) (quoting Donald W. Lyle, Inc. v. Heidner & Co., 45 Wn.2d 806, 814, 278 P.2d 650 (1954)).

[38] Id. ("The offer of proof submitted by [appellant] was so general and indefinite that its rejection was not erroneous.").

Here, the court allowed the proffer to continue until it was clear that Thompson would testify to her interactions with the father concerning a dispute over payment and an alleged attempt by the father to intimidate Thompson. The mother suggests that the offer of proof was prematurely terminated and that Thompson's testimony would establish the father's abusive use of conflict. But she always had the option to present the court with a written offer of proof.[39] The mother does not establish that the trial court abused its discretion by limiting the scope and duration of the offer of proof. Neither does she establish any prejudice.

## CONCLUSION

We reverse the portion of the 2015 final parenting plan altering the order precluding the paternal grandfather from contact with the children. We remand with directions to reinstate the no-contact order. We otherwise affirm the trial court's orders and rulings.

WE CONCUR:

---

[39] See State v. Guloy, 104 Wn.2d 412, 429, 705 P.2d 1182 (1985) (expert's proposed testimony was presented in the form of an affidavit).